Docket No. 99403.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
ROBBIE BISHOP, Appellee.

*Opinion filed January 20, 2006.*

JUSTICE GARMAN delivered the judgment of the court, with
opinion.

Chief Justice Thomas and Justices Freeman, McMorrow,
Fitzgerald, Kilbride, and Karmeier concurred in the judgment and
opinion.

## OPINION

Following a jury trial in the circuit court of Lake County,
defendant Robbie Bishop was convicted of four counts of criminal
sexual assault (720 ILCS 5/12–13(a)(1), (a)(3) (West 1998)) and four
counts of aggravated criminal sexual assault (720 ILCS 5/12–14(a)(2)
(West 1998)). The circuit court sentenced him to concurrent terms of
30 years' imprisonment for the aggravated criminal sexual assault
convictions and concurrent terms of 15 years' imprisonment for the
criminal sexual assault convictions. On appeal, the appellate court
concluded that convictions were proper on only two of the counts of
aggravated criminal sexual assault. Thus, the court vacated the
convictions for criminal sexual assault, and remanded to the circuit
court to enter convictions on two of the four remaining counts. The

appellate court vacated defendant's concurrent sentences as void and remanded for a new sentencing hearing and imposition of consecutive terms of imprisonment. 352 Ill. App. 3d 195. We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315.

## BACKGROUND

Defendant was charged by indictment with sexually assaulting his minor daughter, Q.B., between September 1998 and December 2000.

Count I of the indictment alleged that between September 5, 1998, and December 5, 2000, defendant placed his penis in Q.B.'s vagina by the threat of force and caused her bodily harm by causing her to become pregnant (aggravated criminal sexual assault).

Count II alleged that between September 5, 1998, and December 5, 2000, defendant, being a family member of Q.B., placed his penis in Q.B.'s vagina and caused bodily harm by causing her to become pregnant (aggravated criminal sexual assault).

Count III alleged that between September 5, 1998, and December 5, 2000, defendant committed an act of sexual penetration by placing his penis in Q.B.'s vagina by the threat of force (criminal sexual assault).

Count IV alleged that between September 5, 1998, and December 5, 2000, defendant, being a family member of Q.B., who was under the age of 18 years, committed an act of sexual penetration by placing his penis in Q.B.'s vagina (criminal sexual assault).

Count V alleged that between September 1, 2000, and December 5, 2000, defendant placed his penis in Q.B.'s anus by the threat of force, thereby injuring her anus and causing her bodily harm (aggravated criminal sexual assault).

Count VI alleged that between September 5, 1998, and December 5, 2000, defendant, being a family member of Q.B., placed his penis in Q.B.'s anus, thereby injuring her anus and causing her bodily harm (aggravated criminal sexual assault).

Count VII alleged that between September 1, 2000, and December 5, 2000, defendant committed an act of sexual penetration by placing his penis in Q.B.'s anus by the threat of force (criminal sexual assault).

Count VIII alleged that between September 1, 2000, and

December 5, 2000, defendant, being a family member of Q.B., committed an act of sexual penetration with Q.B., who was under the age of 18 years, by placing his penis in Q.B.'s anus (criminal sexual assault).

Defendant's conduct came to light when Q.B., then 15 years old, told police on December 5, 2000, that defendant had sexually assaulted her the previous night. She advised officers of the location in defendant's bedroom where they would find a soiled condom, a jar of Vaseline, and birth control pills that Q.B. claimed defendant forced her to take. The officers went to defendant's house with Q.B. and found the items in the described locations in defendant's bedroom. Subsequently, defendant was arrested and charged.

At defendant's trial, Terri DeWees, an emergency room nurse with training in sexual assault examinations, testified that she performed a physical examination of Q.B. for a sexual assault evaluation. Q.B. told DeWees that defendant had anally penetrated her and that the sexual assaults had been occurring "most every night" since Q.B. was nine years old. DeWees found nothing unusual in a vaginal examination of Q.B. However, a rectal examination revealed a two-millimeter abrasion near the bottom of Q.B.'s anus at the six o'clock position and some apparent scar tissue at the three o'clock position. DeWees explained that when the body suffers an injury, scar tissue develops during the healing process.

Q.B., who was born on September 5, 1985, testified that defendant gained custody of her and her sister in 1997 and that when she was approximately 12 years old, defendant began to touch her in a sexual manner with his hands and his penis. He would rub his penis on her between her legs. The incidents took place in defendant's bedroom; defendant would call Q.B. into his bedroom and say that he wanted to "do something," or he would tell her to remove her clothes. Because defendant threatened to hurt her if she did not comply with his demands, she went along with it. These incidents would take place two or three times a week. Although she never had a boyfriend and did not go out with friends, Q.B. discovered in July 2000 that she was pregnant. She was 14 years old at the time. Defendant was the only person she was having sexual contact with, although defendant had never put his penis inside her vagina. Defendant took her to an abortion clinic where she registered under a fictitious name.

Subsequently, an abortion was performed.

Q.B. testified that she and defendant were having sexual contact about three times a week before Q.B. discovered she was pregnant. After that, defendant promised that he would never have sexual contact with her again. However, a couple of weeks after the abortion, defendant began to penetrate her anally, which would cause her to cry. Periodically, defendant would apologize and promise to stop abusing Q.B., but he never kept his promises. On December 4, 2000, Q.B. got into trouble with defendant and he paddled her more than 20 times with a wooden paddle. That night, defendant anally penetrated Q.B. The next day, tired of defendant's sexual abuse and his broken promises, Q.B. wrote a note to her gym teacher about the sexual abuse.

Q.B. acknowledged that she had not told anyone of the sexual abuse prior to telling the police on December 5, 2000. She admitted she had opportunities to tell her aunt and grandmother, who had asked if defendant was sexually abusing her. She spoke with personnel from the Illinois Department of Children and Family Services (DCFS) when defendant gained custody of her and her sister, but she did not tell them that she was being sexually abused. When the prosecutor asked why she had not done so, Q.B. testified that the reason she did not reveal the abuse earlier was that she liked living with defendant and did not want him "to go back to jail." On cross-examination, Q.B. stated that she did not recall telling Sergeant Mullen, a police officer, that the sexual abuse had taken place about 20 times since she was 12 years old. Later, the officer confirmed in his testimony that Q.B. had initially made that statement to him.

At the close of the State's evidence, defense counsel moved to dismiss counts I through IV and count VI on the basis that the evidence failed to show that defendant's penis penetrated Q.B.'s vagina and that counts II and VI failed to allege that Q.B. was under the age of 18 years when the acts were committed. The trial court denied the motion as well as defense counsel's motion for acquittal.

During defendant's testimony, he denied sexually touching Q.B. or assaulting her vaginally or anally. The night before Q.B. went to the police, defendant had spanked her for breaking a house rule. He told her he was going to paddle her all week. Defendant explained that the night before Q.B. went to the police, he had used the soiled

condom found in his room while watching an adult video alone. He used the Vaseline to shine his head after he shaved it; he also used it when he had sexual intercourse with his adult female friends. Defendant testified that Q.B. obtained the birth control pills from the abortion clinic.

During closing argument, the prosecutor urged the jury to find defendant guilty on all counts of the indictment. The jury was instructed on all counts of the indictment and was given eight general verdict forms. It returned guilty verdicts on all eight counts.

At the sentencing hearing, defense counsel argued that several of the offenses as set forth in the indictment were duplicative. Counsel argued that the counts charging criminal sexual assault should merge into the counts charging aggravated criminal sexual assault and that defendant should be sentenced on only two of the aggravated criminal sexual assault convictions, one for penis to vagina penetration and one for penis to anus penetration. The prosecutor noted that some of the eight counts of the indictment were charged in different ways that defendant had sexually abused Q.B. She argued that defendant should be sentenced on "at least two, if not three," of the counts of the indictment and that his sentences should run consecutively. At another point, she urged the trial court to impose consecutive sentences on "at least three" of defendant's convictions. The trial court did not address these specific arguments when sentencing defendant on all eight convictions.

Defendant appealed. The appellate court addressed a number of issues. Pertinent to the instant appeal, defendant argued before the appellate court that six of his convictions should be vacated because the eight counts of the indictment did not distinguish the acts alleged in such a manner as to notify him that the State was seeking separate convictions, rather than merely relating alternative theories of liability for each type of penetration alleged. Noting that a defendant must be able to prepare a defense and not merely defend against the charges, the appellate court observed that nothing in the record established that defendant was put on notice prior to trial that he was being charged with eight separate offenses. Relying on this court's decision in *People v. Crespo*, 203 Ill. 2d 335 (2001), the appellate court found that defendant could be convicted on only two counts of aggravated criminal sexual assault, one for each type of penetration.

It vacated defendant's four convictions for criminal sexual assault and remanded the counts of aggravated criminal sexual assault to the circuit court for a determination of the counts on which convictions should be entered. We note, parenthetically, that the appellate court's opinion stated the court was vacating defendant's conviction on, *inter alia*, count IV of the indictment (criminal sexual assault), yet in the next sentence, the court remanded that count to the circuit court, along with counts I, II, and V. 352 Ill. App. 3d at 213. We assume, based upon a reading of the majority opinion as a whole, that this is a typographical error and that the court intended to remand count VI (aggravated criminal sexual assault) to the circuit court, rather than count IV.

The appellate court also vacated defendant's concurrent sentences, finding that consecutive sentences were mandated. 352 Ill. App. 3d at 212.

One justice dissented in part, believing that a fair reading of the indictment put defendant on notice of the need to defend against multiple acts of sexual assault and that the State's treatment of the crimes during the trial, coupled with the indictment, provided clear evidence of the State's intention to treat defendant's conduct as multiple separate acts. 352 Ill. App. 3d at 216. (Bowman, J., dissenting in part).

## ANALYSIS

### I

"Where a defendant challenges the sufficiency of an indictment or information for the first time on appeal, a reviewing court need only determine whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to prepare his or her defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. [Citations.] In making this determination, the reviewing court may resort to the record." *People v. Maggette*, 195 Ill. 2d 336, 347-48 (2001), citing *People v. Gilmore*, 63 Ill. 2d 23, 30 (1976).

## II

The State argues that the indictment sufficiently apprised defendant of its intent to charge him with eight separate acts of sexual assault against Q.B. In addition, the State argues that the appellate court erroneously considered solely the adequacy of the notice in the indictment, rather than the indictment together with the State's treatment of the charges during trial.

The appellate court concluded that the indictment failed to adequately notify defendant that the State was charging him with eight separate acts of sexual assault. According to the court, the fact that the acts were alleged to have occurred over a long period of time does not establish that each of the two types of acts alleged happened more than once. The appellate court found this court's decision in *Crespo* to be controlling. In *Crespo*, the defendant was convicted of murder, aggravated battery with a deadly weapon, aggravated battery causing great bodily harm, and armed violence, which was predicated on the great-bodily-harm aggravated battery charge. The defendant had stabbed one victim to death and stabbed the other victim three times in rapid succession. In the appellate court, the defendant argued that his aggravated battery conviction must be vacated because it was based on the same physical act as the armed violence conviction. The appellate court rejected that argument, but it ordered the circuit court to amend the *mittimus* to reflect only one conviction for aggravated battery. The defendant renewed his argument in this court. The State argued for the first time that since the defendant stabbed the victim three times, each act of stabbing constituted a separate offense. This court concluded that under *People v. King*, 66 Ill. 2d 551 (1977), and *People v. Dixon*, 91 Ill. 2d 346 (1982), each of the three stab wounds could support a separate offense. However, the State did not charge the defendant under this theory. The counts of the indictment did not differentiate among the stab wounds; rather, they charged the defendant with the same conduct under different theories of culpability. This court determined that to apportion the charged offenses among the stab wounds for the first time on appeal would be "profoundly unfair." *Crespo*, 203 Ill. 2d at 343.

The *Crespo* court also noted that the State's theory at trial was to treat the three stab wounds as one offense, as illustrated by its closing argument to the jury. This fact supported the court's conclusion that

the State's intent was to portray the defendant's conduct as a single attack. Constitutional considerations also played a part in the court's decision. Under Illinois law, a defendant has a fundamental right to be informed of the nature and cause of the charges brought against him so that he may prepare a defense and so that the charges may serve as a bar to subsequent prosecution arising out of the same conduct. Accordingly, *Crespo* held that, "in cases such as the one at bar, the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained." *Crespo*, 203 Ill. 2d at 345.

The appellate court in the instant case interpreted *Crespo* to require that a defendant must be apprised prior to trial of the fact that multiple separate offenses are being charged:

> "We recognize that the prosecutor may have indicated in the opening and closing statements that separate offenses occurred over a period of time. The jury instructions may also have indicated that the State was seeking convictions for eight separate acts. However, the alleged notice was insufficient because it was not prior to trial and therefore does not satisfy *Crespo*." 352 Ill. App. 3d at 212.

The State argues before this court that *Crespo*'s holding should be limited to situations in which a defendant commits a series of closely related but separate acts and the indictment or information reflects the State's intention to treat those acts as one offense. According to the State, this is so because it is the close relationship between the acts that requires that they be explicitly treated separately prior to appeal. As an example, the State cites *People v. Lee*, 343 Ill. App. 3d 431 (2003), *aff'd in part & rev'd in part on other grounds*, 213 Ill. 2d 218 (2004), where the defendant shot the victim three times, once in the chest and twice in the leg. He was convicted of murder and aggravated battery with a firearm. On appeal, he argued that both convictions were based on the same act and thus violated the one-act, one-crime principle of *King*. The appellate court agreed, noting that, as in *Crespo*, the defendant committed three separate but closely related acts and the State had not apportioned the acts in the charging instrument so that each could support a separate offense. At trial, the prosecutor treated all three gunshots as one act. Accordingly, the State could not change its theory of the case on appeal. *Lee*, 343 Ill.

App. 3d at 439.

The State argues that the instant case is distinguishable from *Lee* and is more analogous to *People v. Olivieri*, 334 Ill. App. 3d 311 (2002), and *People v. Marston*, 353 Ill. App. 3d 513 (2004). In *Olivieri*, the defendant was charged with three counts of aggravated criminal sexual assault, allegedly committed during an attack that occurred on November 27, 1999. One count alleged bodily harm, another count alleged that the defendant threatened or endangered the life of the victim, and the third count alleged that the defendant committed the sexual assault in the commission of another felony, *i.e.*, home invasion. The defendant was convicted on all three counts. On appeal, the defendant argued that the information charged him with one offense under three different theories, yet he was sentenced on three separate offenses. The appellate court held that the information clearly charged the defendant with three separate sexual assaults: (1) by threatening the victim, (2) by causing bodily harm, and (3) by acting during a home invasion. The offenses were not charged in the alternative. The court also noted that evidence at the preliminary hearing, trial, and sentencing consistently referred to three separate assaults, *i.e.*, oral, vaginal, and anal. The court distinguished *Crespo*, noting that, there, the State portrayed the stab wounds as a single attack. *Olivieri*, 334 Ill. App. 3d at 318.

In *Marston*, count I of the indictment charged the defendant with home invasion in that he, knowing that William Cook was inside the dwelling, intentionally caused injury to Cook by striking him with a metal pole. Count II charged the defendant with aggravated battery in that, by the use of a deadly weapon, he knowingly caused bodily harm to Cook by striking him with a metal pole. On appeal, the defendant argued that his conviction of aggravated battery must be vacated because it was based on the same physical act of striking Cook with the metal pole on which the home invasion charge was based. The State argued that the home invasion charge was based on the defendant's unauthorized entry into the home. It also argued alternatively that the defendant struck Cook three times with the metal pole and that each injury would support a separate conviction. The appellate court concluded that the one-act, one-crime doctrine was not violated by the defendant's convictions because, although there was a common act underlying both offenses, the home invasion charge was based on the additional act of the defendant's

unauthorized entry into the home. The court distinguished *Crespo* on the ground that, there, the indictment did not differentiate among the acts that supported the aggravated battery charges. *Marston*, 353 Ill. App. 3d at 520.

We agree with the State that *Crespo* does not control the outcome of the instant case. The concern in *Crespo* was the State's treatment of three closely related acts as one act in the indictment and at trial, then changing course on appeal to contend that the three acts were separate and would support three separate convictions. It was this action that the *Crespo* court found prejudicial to the defendant. Here, in contrast, the State's treatment of the charges against defendant has been consistent throughout the pendency of these proceedings. The State has not suddenly changed its position to defendant's detriment, as was the case in *Crespo*.

Defendant was charged with four counts of criminal sexual assault. Section 12–13 of the Criminal Code of 1961 (Code) states in relevant part:

> "(a) The accused commits criminal sexual assault if he or she:
>
> (1) commits an act of sexual penetration by the use of force or threat of force; or
> \*\*\*
> (3) commits an act of sexual penetration with a victim who was under 18 years of age when the act was committed and the accused was a family member[.]" 720 ILCS 5/12–13(a)(1), (a)(3) (West 1998).

Defendant was also charged with four counts of aggravated criminal sexual assault. Section 12–14 of the Code states in relevant part:

> "(a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during \*\*\* the commission of the offense:
>
> \*\*\*
> (2) the accused caused bodily harm to the victim[.]" 720 ILCS 5/12–14(a)(2) (West 1998).

"Bodily harm," for purposes of the above statutes, includes

pregnancy. 720 ILCS 5/12–12(b) (West 1998).

As they were pled in the indictment, it is clear that the four counts of criminal sexual assault are lesser-included offenses of the four counts of aggravated criminal sexual assault. A lesser-included offense is an offense proven by lesser facts or a lesser mental state, or both, than the charged offense. *People v. Davis*, 213 Ill. 2d 459, 477 (2004). Count III is a lesser-included offense of count I, count IV is a lesser-included offense of count II, count VII is a lesser-included offense of count V, and count VIII is a lesser-included offense of count VI. At defendant's trial, the evidence showed that defendant had committed multiple acts of sexual assault against Q.B. The evidence as to the number of actual incidents of abuse was somewhat contradictory. For instance, Q.B. testified that the abuse took place two or three times a week between September 5, 1998, and December 5, 2000. This testimony was contradicted by Sergeant Mullen, who testified that Q.B. initially told him the incidents had occurred about 20 times since she attained the age of 12 years (on September 5, 1998). DeWees, the nurse, testified that Q.B. said defendant had assaulted her almost every night since she was nine years old. We recognize that it is often difficult in the prosecution of child sexual abuse cases to pin down the times, dates, and places of sexual assaults, particularly when the defendant has engaged in a number of acts over a prolonged period of time. However, we need not address the question of what difficulties may or may not arise where the State's evidence is based exclusively on a generic pattern of abuse. Here, the record shows that the main evidence at trial centered around Q.B.'s pregnancy and the injuries to her anus. The evidence specifically showed that defendant caused Q.B. to become pregnant and that, following her abortion, he began to penetrate her anally, causing the two injuries to her anus. Thus, the State's focus at trial was on these three acts of penetration. We emphasize that this is not a case of a defective indictment. The State charged defendant in counts I and II under alternative theories of criminal culpability. The other counts were pled as greater and lesser offenses of each other. There is nothing wrong with the way defendant was charged. For this reason, defense counsel had no occasion to challenge the indictment before, during, or after trial on the basis that it did not inform defendant of the charges he faced. Defense counsel made his argument regarding the number of offenses on which defendant should be sentenced at

˘11˘

the first logical opportunity–the sentencing hearing. We note that at the sentencing hearing, the prosecutor urged the trial court to impose consecutive sentences on "at least two, if not three," of defendant's convictions. Conversely, defense counsel argued that the counts as pled were duplicative and that defendant should be sentenced on only two of the counts, one for vaginal penetration and one for anal penetration. It is clear, then, from the record that, while the jury was properly instructed on all eight counts of the indictment, both the prosecutor and defense counsel believed that defendant should be sentenced on only two or three offenses. We agree and conclude that the four counts of criminal sexual assault in the indictment were intended by the State to describe lesser-included offenses of the four counts of aggravated criminal sexual assault. This conclusion is supported by a reading of the indictment itself and by the record in this case. Thus, defendant was not in any manner prejudiced by either the indictment or the State's handling of the case in the trial court.

In keeping with the prosecutor's expressed intent in the trial court, we note the State now concedes that one of defendant's convictions on counts I and II must be vacated, as only one such act led to Q.B.'s pregnancy. Both counts allege that defendant placed his penis in Q.B.'s vagina, causing her bodily harm. The harm identified in both counts is the pregnancy. Both counts allege that this act occurred between September 5, 1998, and December 5, 2000. There was no evidence at the trial that Q.B. became pregnant more than once during this time period. The only difference between the two counts is that count II made the additional allegation that defendant was a family member of Q.B. when the act occurred. Defendant cannot be convicted of both these counts. Accordingly, we accept the State's concession. As to the other counts of the indictment, we hold that defendant's convictions for criminal sexual assault are lesser-included offenses of the convictions for the greater offenses. Accordingly, defendant's convictions for criminal sexual assault must be vacated and sentence imposed only on the three remaining convictions for aggravated criminal sexual assault. See *People v. Garcia*, 179 Ill. 2d 55, 72 (1997) (where multiple convictions of greater and lesser offenses are obtained for offenses arising from a single act, a sentence should be imposed on the most serious offense and the convictions on the less serious offenses should be vacated).

III

Defendant argues that the evidence at trial supported only one instance of injury to Q.B.'s anus. He argues that DeWees' testimony was insufficient to establish that the scar tissue located on Q.B.'s anus resulted from an act of penetration by defendant. He does not dispute that the evidence was sufficient to convict him of one instance of penetration resulting in the abrasion found on Q.B.'s anus. Defendant argues that DeWees is not a medical expert and offered no testimony as to the age or cause of the scar tissue. We note that defendant offers no authority in support of his arguments.

When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "Bodily harm," for purposes of aggravated criminal sexual assault, has the same meaning given to "bodily harm" under the battery statute. *People v. Haywood*, 118 Ill. 2d 263, 276 (1987). Bodily harm consists of "physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). In determining whether a defendant's actions caused bodily harm, direct evidence of injury may be considered or the trier of fact may infer injury based upon circumstantial evidence in light of common experience. *People v. Jenkins*, 190 Ill. App. 3d 115, 138 (1989).

In the instant case, Q.B. testified that when defendant began to penetrate her anally, it caused her to cry. From this statement, the jury could have inferred that defendant's acts caused pain to Q.B. and that the pain accompanied some physical injury. Q.B. further testified that defendant began to penetrate her anally after her abortion in July 2000. She also testified that defendant penetrated her anally on December 4, 2000, the night before she went to the police. From this testimony, together with the testimony of DeWees, the jury could infer that defendant's act of penetration in July 2000 caused the injury from which the scar tissue formed and that his act of penetration in December 2000 caused the abrasion on Q.B.'s anus. Thus, considering the evidence in the light most favorable to the

prosecution, we conclude that two separate injuries to Q.B.'s anus were proven to have been caused by defendant's acts as alleged in counts V and VI of the indictment.

IV

Defendant has cross-appealed, arguing that improper testimony by Q.B. denied him a fair trial. Prior to trial, the circuit court granted defendant's motion *in limine* to exclude any "testimony, discussion, statements, arguments or innuendo" regarding defendant's prior convictions. At trial, Q.B. testified that, although she had the opportunity to tell her aunt, grandmother, and DCFS about the sexual abuse, she said nothing. The prosecutor asked why Q.B. had not told them about the abuse and Q.B. testified that she did not want defendant to go back to jail. Defense counsel objected and moved for a mistrial. The circuit court denied the motion, but sustained defense counsel's objection and instructed the jury to disregard Q.B.'s answer to the prosecutor's question. The appellate court rejected defendant's argument that he was denied a fair trial by the reference to his previous incarceration, noting that the circuit court sustained defendant's objection and gave a curative instruction to the jury and that the matter was not mentioned again at trial or in closing arguments. 352 Ill. App. 3d at 210.

Defendant argues that the circuit court abused its discretion in denying his motion for mistrial. Generally, a mistrial should be granted where an error of such gravity has occurred that it has infected the fundamental fairness of the trial, such that continuation of the proceeding would defeat the ends of justice. The trial court's denial of a defendant's motion for a mistrial will not be disturbed unless the denial was a clear abuse of discretion. *People v. Sims*, 167 Ill. 2d 483, 505 (1995).

Defendant argues that this was a close case, depending, as it did, on a determination of the credibility of himself and of Q.B. He argues that Q.B.'s statement could have led the jury to speculate that defendant had previously been incarcerated for a crime similar to the ones with which he is charged in this case. Defendant relies on two cases for support. In *People v. Goodwin*, 69 Ill. App. 3d 347 (1979), a police officer, acting as a security guard for a department store, observed the defendant shoplifting some clothes from the store. As

the officer was escorting the defendant to the security office, the defendant pulled a knife, threatened to cut the officer and ran when the officer pulled away. The officer gave chase and cornered the defendant, who put the knife to his own throat and asked to be let go because he did not want to go back to prison. The defendant was charged with armed violence. At trial, the prosecutor asked the officer what the defendant did when cornered after the chase ended. The officer answered that the defendant asked him to let defendant go, that he did not want to go back to prison again. The trial court denied defense counsel's motion for a mistrial and refused to strike the testimony and to have the jury admonished to disregard the testimony. The appellate court found that the trial court abused its discretion in light of the fact that material portions of the officer's testimony were in dispute. The officer's testimony that defendant threatened him with a knife was disputed by a store employee who testified that he saw no knife. The appellate court held that, in these circumstances, it could not be said that the officer's testimony did not affect the jury's resolution of the issues. *Goodwin*, 69 Ill. App. 3d at 350.

In *People v. McCray*, 60 Ill. App. 3d 487 (1978), the defendant was convicted of robbery. During his testimony, he denied robbing or hitting the victim. On cross-examination, the prosecutor asked whether the defendant had any occupation other than robbing people. Defense counsel objected and moved for a mistrial. The trial court denied the motion, but sustained the objection and the subject was not raised again. The appellate court found the comment to be so prejudicial as to require a new trial. The court characterized the prosecutor's comment as inexcusable and, within the context of the testimony, characterizing the defendant as a professional robber strongly tended to lessen the credibility of the defendant and that striking the comment from the record was insufficient. *McCray*, 60 Ill. App. 3d at 490.

As defendant admits in his brief, *Goodwin* is distinguishable from the instant case. Here, although the circuit court denied defendant's motion for a mistrial, it did sustain defendant's objection and it instructed the jury to disregard Q.B.'s answer to the prosecutor's question. The revelation that defendant had previously been in jail is not comparable to suggesting that a defendant is a professional robber, when robbery is the very crime with which the defendant is

charged, as happened in *McCray*. Further, we reject defendant's argument that the evidence against him was closely balanced. Defendant points out that he gave an explanation for the items found in his bedroom by police officers and suggested a motive for Q.B.'s statements to the police when he testified that he paddled Q.B. on December 4, 2000, and told her that she would be paddled for a week thereafter. However, Q.B. told officers the exact location of the items in defendant's bedroom, the truth of which was confirmed by the search. Moreover, Q.B. testified that defendant had penetrated her anally at least twice between July 2000 and December 5, 2000. Q.B.'s physical examination revealed an abrasion and scar tissue in two different places on her anus, which tended to support her testimony in this regard. We also disagree with defendant that the revelation of his previous incarceration would lead the jury to speculate that he had earlier been convicted of similar sexual crimes. The mere fact, without more, that defendant had previously been in jail says nothing about the type of offense involved. There would be no particular reason for the jury to think that defendant had a history of committing sexual offenses.

The prosecutor's question as to why Q.B. had not told anyone of the sexual abuse was a natural follow-up to Q.B.'s admission that she had told no one of the abuse, despite having the opportunity to tell DCFS, her grandmother, and her aunt. The question does not appear to have been asked for the purpose of eliciting improper information. The question of why Q.B. did not reveal the abuse earlier would likely have been asked by defense counsel on cross-examination. It was not unreasonable for the prosecutor to anticipate such a question and to seek to remove any tactical advantage by asking the question herself.

We conclude that defendant was not so prejudiced by Q.B.'s statement that he was denied a fair trial. The trial court did not abuse its discretion in denying the motion for mistrial.

V

The trial court imposed concurrent sentences of 30 years for each of the aggravated criminal sexual assault convictions and 15 years for each of the criminal sexual assault convictions. The parties concede this was error. Because defendant was convicted of offenses under sections 12–13 and 12–14 of the Code, the trial court was required to

impose consecutive sentences. See 730 ILCS 5/5–8–4(b) (West 1998); see also *People v. Harris*, 203 Ill. 2d 111, 116 (2003). Accordingly, defendant's concurrent sentences are void (see *People v. Arna*, 168 Ill. 2d 107, 113 (1995)) and the cause must be remanded for resentencing.

> "When multiple convictions of greater and lesser offenses are obtained for offenses arising from a single act, a sentence should be imposed on the most serious offense and the convictions on the less serious offenses should be vacated. [Citation.] However, when multiple convictions for aggravated criminal sexual assault are obtained from a single act of penetration, there is no way to determine the most serious conviction because none of the convictions involve either a more or less culpable mental state. [Citation.] In such cases, reviewing courts have remanded to the trial court for a determination as to which 'counts of aggravated criminal sexual assault are retained.' [Citations.]" *People v. Garcia*, 179 Ill. 2d 55, 71-72 (1997).

We therefore remand to the trial court for resentencing and for a determination as to which of defendant's convictions on count I and count II is the more serious offense.


CONCLUSION

For the reasons stated, the judgments of the circuit and appellate courts are affirmed in part and reversed in part. We affirm three of defendant's convictions for aggravated criminal sexual assault. We vacate defendant's convictions on counts III, IV, VII, and VIII (criminal sexual assault) and remand counts I, II, V, and VI (aggravated criminal sexual assault) to the circuit court. Upon remand, the circuit court shall hold a new sentencing hearing and shall determine whether conviction shall be entered on count I or count II of the indictment for aggravated criminal sexual assault resulting in pregnancy. The count upon which conviction is not entered shall be vacated. The circuit court shall impose consecutive sentences for all three of defendant's convictions.

*Judgments affirmed in part*
*and reversed in part;*

*cause remanded with directions.*