# Illinois Official Reports

## Appellate Court

---

**People v. Kent, 2016 IL App (2d) 140340**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORENZO KENT, JR., Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0340 |
| Filed | September 23, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 13-CF-1262; the Hon. Fernando L. Engelsma, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Christopher McCoy, all of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Lorenzo Kent, Jr., and his girlfriend, Kimiko Wilson, were involved in an altercation with Dashon Thompson and Donmarquis Jackson, with whom Wilson has two children. Based on defendant's and Wilson's conduct during the altercation, a bench trial resulted in defendant's conviction of mob action (see 720 ILCS 5/25-1(a)(1) (West 2012)) and a sentence of 2½ years' imprisonment.

¶ 2    On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he and Wilson acted together to disturb the public peace through the use of force or violence. We agree with defendant and reverse the conviction.

## I. BACKGROUND

¶ 4    Defendant and Wilson were charged with mob action based on the allegation that, on May 4, 2013, they knowingly, by the use of force or violence, disturbed the public peace in that they, while acting together and without authority of law, struck Jackson, thereby inflicting injury to him. See 720 ILCS 5/25-1(a)(1) (West 2012).

¶ 5    Thompson testified at trial that on May 4, 2013, he and Jackson were riding in a car when Jackson received a call from Wilson. Thompson heard Jackson arguing with Wilson on the phone. Thompson drove to Jackson's home on Nelson Boulevard in Rockford. As Thompson and Jackson were exiting the car, Wilson and defendant drove up together. Jackson and Wilson argued in the front yard. Then Jackson and defendant argued.

¶ 6    Doris Gregory, who was Jackson's girlfriend and was watching his children at the residence, also testified that there were two arguments: one between Jackson and Wilson and one between Jackson and defendant. Gregory testified that defendant was in his vehicle while Jackson and Wilson argued and that defendant and Jackson argued only after defendant exited his vehicle.

¶ 7    Thompson testified that Wilson argued with Jackson outside the home and then turned to enter it. As Wilson started to enter the home, Jackson turned to enter the home. Gregory and Thompson each testified that, as Jackson turned to enter the home, defendant struck Jackson from behind. A fight ensued between defendant and Jackson on the home's enclosed porch. Thompson saw a glass break on the porch floor and heard the children screaming from inside. Gregory saw part of the fight through a glass door, while she was inside helping Wilson and Jackson's daughter put on a coat.

¶ 8    The court heard conflicting testimony about Wilson's participation in the fight. Gregory testified that she saw Wilson argue with Jackson and pick up a wheelchair as if to strike Jackson with it, though Gregory never saw Wilson strike Jackson or hear what Wilson said. Thompson, however, testified that he saw Wilson next to the wheelchair but never saw her pick it up or attempt to strike Jackson. Thompson testified that Wilson did not communicate with defendant.

¶ 9    Thompson broke up the fight after four to five minutes. He testified that after the fight defendant threatened Jackson with a knife. Gregory did not see defendant do or say anything after the fight. Jackson suffered a cut over his left eye, bite marks on his head, and scrapes on his elbow and knee.

¶ 10    Following the State's case, defendant moved for a directed finding, arguing that the State had not established that defendant and Wilson were acting together in the course of the conduct. He also argued that the fight had not disturbed the public peace because it took place on an enclosed porch. The State responded that the "acting together" element was satisfied by Gregory's testimony about Wilson's actions with the wheelchair while in close proximity to the fight and by the evidence that Wilson's argument with Jackson was the catalyst of the fight.

¶ 11    The trial court found that, when viewed in the light most favorable to the State, the evidence was sufficient to establish mob action. Noting that presence alone is not enough to establish a criminal offense, the court determined that presence may be considered when analyzing whether two people were acting together. The court found that there was unity of purpose between Wilson and defendant, as they were there to pick up Wilson's and Jackson's children and they each argued with Jackson. In combination with the timing of the occurrence, the trial court found there was sufficient evidence to survive the motion for a directed finding.

¶ 12    Detective Scot Mastroianni testified for the defense that, when he spoke with Gregory two days after the incident, she did not say that she witnessed the fight. About a month later, Gregory changed her story and reported that she had witnessed the fight.

¶ 13    After closing argument, the trial court found defendant guilty of mob action. In explaining its decision, the court found that, although Thompson's testimony was impeached by his prior convictions, it was credible because it was consistent with Gregory's testimony. The court noted Thompson's testimony that Jackson and Wilson were arguing and that defendant struck Jackson from behind as Jackson was following Wilson into the house.

¶ 14    The trial court found that Gregory's testimony about the wheelchair had been somewhat impeached. However, the court found the wheelchair testimony to be irrelevant, as there was not enough "substantive" testimony as to whether the wheelchair was moved or had been used as a weapon. Therefore, the court reached "no conclusions concerning the wheelchair."

¶ 15    The trial court determined that, to prove "acting together" for purposes of mob action, the State need not prove that defendant and Wilson were acting in furtherance of the final crime of inflicting violent injury on Jackson, but rather that they were acting with a similar purpose and knowingly performing actions that disturbed the public peace. The court concluded that, when determining if two parties were acting together, the relevant factors to consider are whether the parties arrived together, whether there was a spatial closeness between the parties, and the type of language between them.

¶ 16    The trial court found that there was no communication between Wilson and defendant but that the other surrounding circumstances showed a singular purpose such that defendant and Wilson were acting together. The court noted the verbal altercations between the two sides, the simultaneous arrival of defendant and Wilson, and Wilson's attempt to enter the home as defendant struck Jackson from behind. The court also found that Jackson sustained injuries that were violently inflicted and that, although the altercation continued on the porch, the altercation disturbed the public peace because it had started in the front yard. Following the denial of defendant's posttrial motions and the sentencing hearing, defendant timely appealed.

## II. ANALYSIS

In a challenge to the evidence supporting a criminal conviction, a reviewing court does not retry the defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). "When reviewing the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.)" *People v. Bishop*, 218 Ill. 2d 232, 249 (2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Our duty is to carefully examine the evidence while giving due consideration to the fact that the court saw and heard the witnesses. The testimony of a single witness, if it is positive and the witness is credible, is sufficient to convict. *Smith*, 185 Ill. 2d at 541. The credibility of a witness is within the province of the trier of fact, and the court's finding on such matters is entitled to great weight, but its determination is not conclusive. We will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Smith*, 185 Ill. 2d at 542.

Defendant was convicted of a violation of section 25-1(a)(1) of the Criminal Code of 2012, which defines mob action as "the knowing or reckless use of force or violence disturbing the public peace by 2 or more persons *acting together* and without authority of law." (Emphasis added.) 720 ILCS 5/25-1(a)(1) (West 2012). A conviction under this section requires that the evidence show that the accused "was part of a group engaged in physical aggression reasonably capable of inspiring fear of injury or harm." *In re B.C.*, 176 Ill. 2d 536, 549 (1997). An individual's mere presence in a place where a riot or disturbance is taking place does not support a conviction of mob action. *People v. Roldan*, 54 Ill. 2d 60, 64 (1973) ("The evidence offered by the prosecution was entirely consistent with the innocent presence of the defendants on the playground."). Similarly, to sustain a mob-action conviction, the State must present evidence that the individual had the requisite mental state of having the intent to commit an unlawful act. *In re Kirby*, 50 Ill. App. 3d 915, 917-18 (1977) (conviction reversed where there was no evidence that the defendant either threatened or touched the victim).

Defendant does not dispute that he struck Jackson from behind and thus knowingly used force or violence to disturb the public peace. However, defendant challenges the evidence supporting the "acting together" element of the offense. Even under the extremely deferential standard for reviewing the evidence that supports a criminal conviction, we conclude that the State failed to prove beyond a reasonable doubt that defendant and Wilson were acting together when he committed the battery of Jackson.

In support of its finding that defendant and Wilson were acting together, the trial court cited evidence of the simultaneous arrival of defendant and Wilson, the verbal altercations with Jackson on one side and defendant and Wilson on the other, and what the trial court called the "almost instantaneous" acts of Wilson attempting to enter the home and defendant striking Jackson. However, without more, this evidence does not satisfy the "acting together" element of mob action.

The trial court found the testimony regarding Wilson and the wheelchair to be irrelevant and unsubstantiated by other evidence. The court went a step further and found that there was no evidence that Wilson attempted to use the wheelchair as a weapon. The State offered no

evidence that Wilson threatened or touched Jackson as they argued or during Jackson's altercation with defendant. There was no evidence of exactly what, if anything, Wilson said during the entire incident. There was no evidence of communication between defendant and Wilson that would indicate Wilson's intent or a commonality of purpose between them.

¶ 23 The State contends that the "acting together" element was satisfied by evidence that (1) Wilson attempted to enter Jackson's home by force and without permission, (2) Wilson had a loud argument with Jackson, which showed that she had the requisite mental state to disturb the public peace, and (3) defendant assisted Wilson by arguing with Jackson before striking him. The State could have established the "acting together" element by showing that Wilson was forcefully attempting to enter the home and that defendant struck Jackson to assist Wilson, but the trial court heard no such evidence.

¶ 24 Thompson testified that Wilson turned and tried to enter the house. However, there was no testimony that she lacked permission to enter, that Jackson or Gregory attempted to stop her, or that her actions were forceful, violent, or aggressive. Indeed, Gregory testified that the fight started when she was helping Wilson's and Jackson's daughter put on her coat to leave. Further, both Gregory and Thompson testified that Wilson remained on the porch during the fight and did not continue trying to enter the home. Contrary to the State's assertion, the evidence presented at trial does not support the inference that Wilson's attempted entry into the home was forceful and without the permission of Jackson or Gregory.

¶ 25 Although the court heard testimony that Wilson engaged in a verbal argument with Jackson before defendant struck him, there is no evidence that she was part of a group engaged in physical aggression. See *B.C.*, 176 Ill. 2d at 549 (the accused must be shown to be "part of a group engaged in physical aggression reasonably capable of inspiring fear of injury or harm"). Without evidence of a common purpose to disturb the public peace by striking Jackson, Wilson's argument with Jackson is not sufficient to show that she and defendant were acting together.

¶ 26 We defer to the trial court's credibility determinations, but the court heard no evidence that defendant and Wilson assisted each other. Defendant and Wilson were not acting together, other than by being present in the area of the disturbance and arguing with Jackson before defendant committed a battery against him. Thus, the evidence at trial is insufficient to show that defendant and Wilson were acting together to disturb the public peace. We reverse the conviction of mob action because the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of defendant's guilt. See *Smith*, 185 Ill. 2d at 542.

¶ 27                                                    III. CONCLUSION

¶ 28 Defendant was not proved guilty of mob action beyond a reasonable doubt because the State did not present sufficient evidence that defendant and Wilson were "acting together." Wilson's presence in the area of the disturbance and her arguing with Jackson do not satisfy the "acting together" element. The judgment of the circuit court of Winnebago County is reversed.

¶ 29 Reversed.