2026 IL App (2d) 250012-U
No. 2-25-0012
Order filed April 10, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

ERNESTO VELASQUEZ-JIMINEZ, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Donald J. Tegeler, Judge, Presiding.
No. 23-CF-1212

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State's addition to the verdict forms did not prejudice defendant as there was sufficient evidence to sustain his conviction for aggravated criminal sexual abuse; there was no error in the admission of other-crimes evidence; counsel was not ineffective with respect to defendant's sex-offender evaluation at sentencing, as counsel used the document in mitigation and there was no prejudice to defendant.

¶ 2    After a jury trial, defendant Ernesto Velasquez-Jiminez was convicted of three counts of predatory criminal sexual assault (PCSA) (720 ILCS 5/11-1.40(a)(1) (West 2022)) and seven counts of aggravated criminal sexual abuse (ACSAb) (*id.* §§ 11-1.60(c)(1)(i)), to the minor, G.L. The trial court sentenced defendant to an aggregate 49-year-prison term. Defendant appeals and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The charges in this case stem from events that occurred between October 1, 2021, and June 3, 2023. During that time, defendant was the romantic and domestic partner of Angela V. Angela had two daughters from Angela's prior relationship, G.L. and B.L., who were born in June 2011 and August 2008, respectively. G.L. and B.L. both referred to defendant as their "stepfather" even though defendant and Angela were not married. Angela's other children include three young sons; defendant is their biological father. During the relevant timeframe, defendant and Angela's blended family lived in a single-family home in Addison and then moved to one in Elgin in 2022. Defendant was born in 1989; he was in his early 30s when these events took place.

¶ 5      Pursuant to 725 ILCS 5/115-10 (West 2022), the trial court granted the State's request to admit G.L.'s recorded interview at the Kane County Child Advocacy Center (CAC), as well as testimony regarding G.L.'s outcry to her mother. Pursuant to 725 ILCS 5/115-7.3 (West 2022), the trial court also granted the State's motion to admit evidence concerning defendant's uncharged sexual abuse of G.L.'s older sister, B.L. The trial court denied the State's motion to admit evidence of uncharged acts concerning G.L. that occurred when the family lived in Addison due to the potential for juror confusion, at least prior to trial. The court noted however that, owing to the sheer number of sex crimes alleged, the jury was likely to hear about uncharged conduct through G.L.'s trial testimony, and it would consider those issues at trial as they arose.

¶ 6      Angela, B.L., and G.L. testified at defendant's trial, as well as several law enforcement witnesses. Relevant here, G.L. testified about a number of specific incidents, all involving the same general pattern of conduct. Defendant would corner G.L. and touch her breasts or vagina, both through her clothes and by sticking his hands under her clothing and touching her skin. He would also rub or attempt to stimulate her with his hands. On one occasion, in the living room, he used

his foot to stimulate her vagina through her clothing. Defendant often approached and touched G.L. while she was holding or caring for her younger brothers, who were too young to say anything. G.L. explained that she had not disclosed the abuse earlier because it would have hurt her mother and her family. G.L.'s older sister, B.L., testified that defendant had touched her in a similar sexual manner when the family lived in Addison, but as B.L. got older, she became more averse to defendant, and he began to focus his attention on G.L.

¶ 7    In addition, the State published the video of G.L.'s victim-sensitive interview at the CAC. The jury also saw a brief video recording of a conversation that occurred between defendant and Angela in the basement of the Elgin house shortly after G.L. reported defendant's sexual abuse to her mother. Cameras were set up in the basement to monitor more than a dozen birds that defendant kept as pets. The conversation occurred in Spanish but was transcribed and translated for the jury. During his conversation with Angela, defendant got down on his knees and said that "it" was "an accident" with G.L., that his "intentions" were not sexual, and he begged Angela for forgiveness. Defendant also questioned why or how Angela could not accept his explanation that it was only accidental. After the State rested its case, the defense rested without presenting evidence.

¶ 8    At the jury instruction conference, the trial court judge pointed out the potential for juror confusion over which verdict form related to which specific act that G.L. had testified to. After a break, the State submitted revised verdict forms that indicated the location in the house where the charged act had occurred, *e.g.*, living room, kitchen, bedroom, etc. The defense did not object to the State's clarification. As charged in the indictment, counts 1 through 3 alleged PCSA for the three occasions when defendant touched G.L.'s vagina with his hand; counts 4 through 6 charged ACSAb for three occasions when defendant touched G.L.'s breast; and counts 7 through 10 charged ACSAb for four occasions when defendant touched G.L.'s vagina with his hand over

clothing. The jury found defendant guilty on all counts, and he was sentenced to 15 years imprisonment on each PCSA count, to run consecutively, and 4 years on each ACSAb count, to run concurrently.

¶ 9                                                    II. ANALYSIS

¶ 10     Defendant's first contention on appeal is that there was insufficient evidence to sustain his conviction for one of the ACSAb charges—count 10 of the indictment. Defendant does not challenge the evidentiary support for his other convictions. If he is correct that the evidence was insufficient on count 10, we would be required to reverse that conviction. See *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 11     According to defendant, the State narrowed the scope of count 10 by including the word "bedroom" on the verdict forms for that offense. While defendant agrees that G.L. clearly testified defendant touched or rubbed her vagina with his hand under her clothes in the bedroom, thereby validating one of his convictions for PCSA (specifically, count 1), she never testified or stated in the CAC interview that he touched her vagina *over* her clothing in the bedroom, which he claims was necessary to sustain his conviction for ACSAb per count 10. Additionally, defendant asserts that because G.L. specifically testified that defendant touched her vagina only one time in the bedroom, his conviction for both PCSA and ACSAb therefore violates the one act, one crime doctrine.

¶ 12     The State responds that the inclusion of the room on the verdict forms was surplusage. Because G.L. testified that defendant touched her vagina over her clothing "[m]ore than one time" in the kitchen, and "[m]ore than one time" in the living room, according to the State, the evidence shows defendant committed *at least* four acts of ACSAb during the relevant timeframe by touching her vagina through her clothing. We agree with the State.

- 4 -

¶ 13    Due process requires proof beyond a reasonable doubt of "the essential elements of the crime." *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007); see also *Jackson*, 443 U.S. 307, 318-19 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). A person commits aggravated criminal sexual abuse if that person is over the age of 17 and commits an act of "sexual conduct" with a victim under the age of 13. 720 ILCS 5/11-1.60(c)(1)(i). The statutory authority defines sexual conduct as "any knowing touching or fondling by *** the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age, *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/11-0.1 (West 2022).

¶ 14    Like our supreme court, "[w]e recognize that it is often difficult in the prosecution of child sexual abuse cases to pin down the times, dates, and places of sexual assaults, particularly when the defendant has engaged in a number of acts over a prolonged period of time." *People v. Bishop*, 218 Ill. 2d 232, 247 (2006). In order to sustain convictions on such charges, first the victim "must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct ***." (Emphasis in original and internal quotation marks omitted). *People v. Letcher*, 386 Ill. App. 3d 327, 334 (2008). Second, the victim's testimony must "describe the *number of acts* committed with sufficient certainty to support each of the counts alleged ***." (Emphasis in original). *Id*. Finally, the victim must be able to describe the general time period in which the acts occurred, for purposes of the statute of limitations and age requirements. *Id*. Additional details about time, place or circumstances of each incident may assist in determining credibility, but "are not essential to sustain a conviction." *Id*.  We have previously held that testimony similar to G.L.'s may sustain convictions for multiple sex offenses, and defendant does not argue against the third *Letcher* requirement here. See *id*.; *People v. Avendano*, 2023 IL App (2d) 220176, ¶ 53; see also *People v.*

- 5 -

*Foster*, 2023 IL App (2d) 220176-U, ¶ 114; *People v. Gonsalez-Garcia*, 2023 IL App (2d) 230035-U, ¶ 52.

¶ 15    Whether we are examining a charging instrument or a verdict form, all language other than the essential elements of the offense "may be regarded as surplusage." *People v. Boand*, 362 Ill. App. 3d 106, 130 (2005) (citing *People v. Collins*, 214 Ill. 2d 206, 219 (2005)); see also *People v. Nathan*, 282 Ill. App. 3d 608, 611 (1996) (when the essential elements of an offense are properly charged but the manner in which the offense is committed is incorrectly alleged, the error is merely formal). To be sure, no offense in the Criminal Code has, as an element, that the crime must occur in a specific interior room, and there is no such crime as aggravated criminal sexual abuse *in the bedroom*. In addition, our supreme court has emphatically stated that a jury's verdict cannot be set aside so long as the jury's intent can be discerned with respect to the essential elements of the offense. See *People v. McNeal*, 175 Ill. 2d 335, 360 (1997); *People v. Mack*, 167 Ill. 2d 525, 537-38 (1995).

¶ 16    We agree with the State that the inclusion of the word "bedroom" on the verdict form for count 10 was surplusage. The victim's testimony established with sufficient specificity  multiple acts of ACSAb during the timeframe and in the county as charged in the indictment, and defendant has never alleged he lacked adequate notice to defend against those charges. See *Boand*, 362 Ill. App. 3d at 130. A careful review of the record reveals that the essential elements of a distinct *fourth* ACSAb offense were proven sufficient to sustain count 10. See *Avendano*, 2023 IL App (2d) 220176, ¶ 53. In fact, G.L. testified at trial to more than four occasions in which defendant touched her vagina over her underwear: in the living room "more than once" (including one time when she was wearing shorts and holding her brother); "more than once" in the kitchen (including one time in the morning while she was making eggs); and one time in the basement. Thus, she established

at minimum five separate incidents in which defendant touched her vagina over clothing. While none of these occurred in her bedroom, the specific location (other than the county) is not an element of the crime charged and is therefore unnecessary. See *Letcher*, 386 Ill. App. 3d at 334-35. Further, her testimony distinguished these events from those in which defendant touched her vagina "under her clothes," meaning that defendant was not in fact charged twice for the same act. We emphasize that while the State has no legitimate interest in obtaining a conviction that is not warranted by the evidence, the defendant has no right to an acquittal when the evidence is sufficient to establish the essential elements of the charged offense beyond a reasonable doubt. See generally *People v. Kennebrew*, 2013 IL 113998, ¶ 24 (collecting cases). Accordingly, we determine there was no error with respect to defendant's conviction and sentence on count 10 of the indictment.

¶ 17 Defendant next contends that the trial court reversibly erred when, pursuant to 725 ILCS 5/115-7.3, it allowed "the State to present[ ] evidence of at least 14 other acts" committed against G.L. and B.L. Defendant notes that there was no objection to G.L.'s or B.L.'s testimony during trial but asks us to consider the issue under the rubric of first-prong plain error. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Defendant likens his case to *People v. Cardamone*, 381 Ill. App. 3d 462 (2008). We disagree.

¶ 18 We observe that it is difficult to evaluate such a claim under first-prong plain error, because defendant's argument is essentially a claim of cumulative error based on 14 instances of (mostly) G.L.'s testimony at trial. Like the State, we question defendant's arithmetic because some of the testimony defendant assails as unduly prejudicial was largely G.L. explaining how defendant would isolate her from other adults or her older sister, how defendant would touch or rub her (both over and under her clothes), and how defendant would abuse her as she held one of her younger brothers in her arms—as if to give his sexual touching the veneer of having been accidental.

Contrary to defendant's argument, G.L.'s explanations provided context and were inextricably intertwined with her description of the charged offenses; thus, this was not "other-crimes evidence." Furthermore, it is difficult to take what is essentially a claim of cumulative error, which is comprised of multiple errors, and then say, under the first prong of the plain-error rule, that "*the error alone* threatened to tip the scales of justice against the defendant \*\*\*." (Emphasis added.) *People v. Moon*, 2022 IL 125959, ¶ 20. The first prong of the plain-error rule "*i.e.*, the closely balanced evidence prong, 'guards against errors that could lead to the conviction of an *innocent* person.' " (Emphasis added.) *Id*. ¶ 23 (quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)). Defendant's argument can be read to suggest that, if not for some of G.L.'s and B.L.'s descriptions of his conduct, he would not have been convicted of anything at all. That is doubtful in the extreme. Defendant's argument can also be read to imply that, in light of counsel's failure to object, the evidence was so clearly prejudicial that the trial court should have excluded the evidence on the court's own volition. That, too, cannot be correct. See *People v. Smith*, 2017 IL App (1st) 143728, ¶ 60 ("[i]t is well-established that the trial court has no duty to *sua sponte* exclude evidence when a party fails to make an objection"). In short, none of these suggestions are tenable.

¶ 19   We need not ponder the contours of this "cumulative" plain-error issue too much, because defendant cannot point to a specific clear evidentiary error at his trial. His failure to do so stands in *sharp* contrast to *Cardamone*. In *Cardamone*, we recognized that there might be times when the sheer volume of other-crimes evidence renders it all unduly prejudicial. 381 Ill. App. 3d at 489-97. There, the State, in its prosecution of a gymnastics coach for sexual abuse, introduced hundreds of incidents of uncharged conduct with over a dozen victims. *Id*. The amount of uncharged other-crimes evidence practically eclipsed the evidence supporting the charged offenses, all of which involved over 100 witnesses, multiple victims, and a series of overlapping events and hazy and

often inconsistent descriptions. *Id*. As we explained there, "other-crimes evidence must not become a focal point of the trial, and the detail and repetition admitted must be narrow so as to avoid the danger of a trial within a trial." *Id*. at 489 (citing *People v. Boyd*, 366 Ill. App. 3d 84, 95 (2006)).

¶ 20 Here, however, the amount of other-crimes evidence was paltry by comparison, and the charges were much simpler than those in *Cardamone*. The charges encapsulated defendant's conduct against a single victim, G.L., and the majority of the evidence came from her statements exclusively. "Simply put, *Cardamone* was an extreme case." *People v. Perez*, 2012 IL App (2d) 100865, ¶ 49. Further unlike *Cardamone*, there was no dispute about defendant's identity, motive, or opportunity. While G.L. was young, and both sides' questioning of her could have been much more precise, the amount of other-crimes evidence introduced by both G.L.'s and B.L.'s testimony was not such that the jury would have been confused, inundated, distracted, or misinformed. In short, the trial evidence in this case was not unfairly prejudicial.

¶ 21 Last, defendant contends that his counsel was ineffective for allowing the State to introduce his pre-trial sex-offender evaluation in the presentence investigation report (PSI) at sentencing, in violation of 730 ILCS 5/5-3-2(b-5) (West 2022). Contrary to defendant's argument, however, the record indicates that defense counsel tendered the pre-trial evaluation as defendant's Exhibit #4 for mitigation purposes at sentencing. Defense counsel then argued that the sex-offender evaluation was an example of defendant's contrition. At the sentencing hearing, counsel stated:

> "You see that when Mr. Velasquez was charged, he submitted to a sex offender evaluation. He began treatment, and from the status letter that we received from [evaluator Jorge] Martinez, you see a gentleman that submitted himself to polygraph testing and weekly meetings and was consistent and actively participated in those meetings indicating someone that wishes to better himself."

That argument certainly was not unreasonable. The relevant statute, 730 ILCS 5/5-3-2(b-5), bars the State or probation from including the evaluation as part of the presentencing report; it does *not* prohibit the defense from using a voluntary evaluation as evidence in mitigation. That would make this "a matter of defense strategy" (*People v. Bunning*, 298 Ill. App. 3d 725, 728 (1998)), which generally precludes a finding ineffective assistance of counsel. See, *e.g.*, *Strickland v. Washington*, 466 U.S. 668, 699 (1984) (finding that counsel's reasonable strategic choices at sentencing were not ineffective assistance). Moreover, we agree with the State that the evaluation itself had no prejudicial impact on defendant's sentences, which were all in the low to middle range.

¶ 22                                III. CONCLUSION

¶ 23     Having found no reversible error in defendant's trial or sentence, for the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 24     Affirmed.