No. 2--07--0699    Filed: 10-24-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--38 |
| CHRISTOPHER E. LETCHER, | ) ) ) | Honorable John E. Payne, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the opinion of the court:

Defendant, Christopher E. Letcher, appeals his conviction of eight counts of predatory criminal sexual assault of a child (720 ILCS 5/12--14.1(a)(1) (West 2006)). He contends that there was insufficient evidence of the number of incidents and their dates to convict him on all counts. We determine that there was sufficient evidence on six of the eight counts. Accordingly, we affirm defendant's convictions on six counts and reverse his convictions on two counts.

I. BACKGROUND

On May 3, 2007, defendant was charged by information with 14 counts of predatory criminal sexual assault of a child. On July 31, 2007, a bench trial was held, and defendant was found guilty of eight counts. Six of those counts alleged that defendant knowingly committed an act of sexual penetration against his daughter, K.J.L., by placing his penis in her vagina "on or about" the

following dates: August 2005, January 2006, February 2006, April 2006, May 2006, and September 2006. One count alleged that defendant committed an act of sexual penetration by placing his penis on K.J.L.'s mouth on or about December 2006, and another alleged that he placed his tongue on her vagina, also on or about December 2006. Defendant did not object to the amount of specificity in the information.

At trial, Brad Sibley, a police detective, testified that on January 21, 2007, he interviewed defendant in connection with the allegations. Sibley told defendant that K.J.L. reported an "inappropriate relationship" between defendant and herself. Defendant responded that he did not have intercourse with K.J.L. but stated that, in approximately January 2006, he touched her breasts and vaginal area over her clothing. Defendant stated that K.J.L. initiated the sexual contact. Defendant also admitted to similar touching over K.J.L.'s clothing in February 2006. Defendant told Sibley that on a third occasion he touched K.J.L.'s breasts under her clothing and rubbed her vaginal area under her clothing, but over her underwear.

Defendant also admitted a fourth incident that occurred in approximately September 2006, stating that K.J.L. kissed his penis for a few seconds. According to Sibley, defendant then said that the fourth incident progressed from there and that he kissed or licked K.J.L.'s vaginal area. Sibley told defendant that K.J.L. had disclosed something similar, but she had indicated that it occurred in December 2006. Defendant conceded that that time frame was possible. When defendant was told that K.J.L. also reported that they had intercourse, defendant adamantly denied it.

In order to establish a time frame for when the offenses occurred, K.J.L. and her mother testified to K.J.L.'s age, where she lived, and the friends she played with. For example, in August 2005, the family was living in what was referred to as the "old house," and K.J.L. played with her

friends Z. and M. In August 2006, the family moved to the "new house," where K.J.L. played with her friend A.

K.J.L. testified that beginning in 2005, when she was six and living at the old house where she played with Z. and M., defendant "used his private parts on me." She clarified that the term "private parts" referred to his penis. K.J.L. stated that "he used them on my bottom and my vagina" and that "he pushed them in and out." She later stated that defendant used his hands "in my vagina, bottom, and breast." K.J.L. testified that defendant would remove her clothes and that he "captured" her and "trapped" her on the bed when she tried to run away. The incidents took place in defendant's bedroom when K.J.L.'s mother was not home. When asked how many times defendant did these things, but without specifying penile penetration, K.J.L. responded, "too many times to remember" and that it was "a lot" of times.

K.J.L. testified that after they moved to the new house, where she played with her friend A., defendant again touched her in ways she did not want to be touched and that he "used the same technique he did at the old house." When asked to clarify what happened in the new house, she stated that "[h]e used his penis on my bottom again, his penis on my vagina again, he used his hands on my boobs again, my hands on my vagina again, and my hands on my butt again." When asked how many times he did this, she answered, "too many times to remember."

When asked to remember the last time "he did this to you," K.J.L. said that it was two days before Christmas and stated: "He used his penis on my butt--butt again, he used his penis on my vagina again, he used his hands on my bottom again." K.J.L. stated that he also tried to put his penis in her mouth about six times, that she shut her mouth tight, and that he put his penis on her lips. K.J.L. was then asked if defendant ever placed his mouth anywhere on her body. She answered "yes"

and stated that defendant put his mouth on "my butt, my vagina, and my boobs *** too many times to remember."

After a break in the testimony, K.J.L. was asked to clarify how many times the events concerning her "behind," "breasts," and "vagina" occurred. K.J.L. said that it was like watching Star Wars "for the rest of your life and keep rewinding it *** and keep watching it *** [a]nd not doing anything but watch it." After another break in the testimony, the following colloquy occurred between the State and K.J.L.:

"Q. *** Why are you angry with [defendant]?

A. Because he touched me in unavailable places that he wasn't supposed to.

***

Q. And so you're mad that your father touched you in these ways?

A. Yes.

Q. But you wouldn't lie about this, would you?

A. No, I would never lie about it.

Q: Because it's important to tell the truth?

A. Yes.

Q. And when we're talking about that it happened so many times that you can't remember, did it--it happened all--a lot, didn't it?

A. (Indicates affirmatively.)

Q. Can you even guess as to how many times it happened?

***

A. No.

***

Q. But you can count up to five, right?

A. (Indicates affirmatively.)

Q. Yeah. You're in third grade so you should easily be able to count up to five. Did it happen more than five times?

A. Yes."

The court found defendant not guilty on six counts that alleged that defendant placed his finger inside K.J.L.'s vagina on various dates. The court then found him guilty on the remaining eight counts. The court sentenced defendant to 20 years in prison on each count, with the sentences to run consecutively. Defendant's motion to reconsider the sentence was denied. Defendant appeals.

## II. ANALYSIS

Defendant contends that there was insufficient evidence to convict him on all eight counts. He argues both that the evidence about the dates of the acts was too vague to support his convictions and that the State failed to show that the number of acts he was convicted of occurred.

The State observes that defendant did not file a motion for a bill of particulars. He also did not raise issues about the State's evidence in a posttrial motion. But defendant does not argue on appeal that the charges were not detailed enough to allow him to formulate a defense, and it is well established that a defendant may challenge the sufficiency of the evidence for the first time on appeal. People v. Zizzo, 301 Ill. App. 3d 481, 486 (1998).

The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Zizzo, 301 Ill. App. 3d at

486. "Our task is not to retry the accused, and we will not substitute our judgment for that of the trier of fact with respect to the witnesses' credibility, the weight to be given to the evidence, or the reasonable inferences to be drawn from the evidence." Zizzo, 301 Ill. App. 3d at 486. "We will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the accused's guilt." Zizzo, 301 Ill. App. 3d at 486. Although a different standard of review was applied to sex offense cases previously and in other districts, we no longer require the State to demonstrate that the victim's testimony was clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt. See In re A.J.H., 210 Ill. App. 3d 65, 70-71 (1991).

Section 12--14.1(a)(1) of the Criminal Code of 1961 provides:

"(a) The accused commits predatory criminal sexual assault of a child if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed[.]" 720 ILCS 5/12--14.1(a)(1) (West 2006).

The Code defines "sexual penetration" as:

"[A]ny contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." 720 ILCS 5/12--12(f) (West 2006).

Defendant first argues that the evidence was insufficient to convict him on all counts, because the State did not show that the offenses occurred on the specific dates alleged. We disagree.

The date of the crime is not an essential element of the offense when the statute of limitations is not questioned. See People v. Escobedo, 151 Ill. App. 3d 69, 85 (1986). In Escobedo, the defendant was charged with two counts of indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, pars.11--4(a)(2), (a)(3)). A bill of particulars identified two specific dates and stated that the first incident involved " 'oral copulation' " while the second was an act of " 'lewd fondling.' " Escobedo, 151 Ill. App. 3d at 74. At trial, the victim, K.S., was unable to state the exact dates of the incidents, but she had previously said that there were four to seven incidents. She also placed the incidents in the month alleged in the bill of particulars and gave a detailed account of the events. At times, the victim's testimony about other items was contradictory or inconsistent. Escobedo, 151 Ill. App. 3d at 75-76.

The First District applied the more stringent and no longer applicable standard of review, requiring substantially corroborated clear and convincing evidence. Escobedo, 151 Ill. App. 3d at 81. Nevertheless, the court concluded that there was sufficient evidence to convict, noting that discrepancies in the victim's testimony about other items or about the dates of the offenses did not detract from the reasonableness of her statements regarding the defendant's indecent acts. Escobedo, 151 Ill. App 3d at 82. The court stated:

"For example, defendant points out that K.S. could not specify with certainty the dates, or days of the week, of the offenses. We do not attach particular significance to her inability to do so. During the cross-examination of K.S.'s father, defendant elicited the fact that K.S. had testified at the preliminary hearing to being molested by defendant on four to

seven occasions, including the two incidents with which defendant was charged. Because of the apparent ongoing nature of the offenses, we believe that it is not unreasonable that the minor complainant would not be able to pinpoint the exact dates of the two incidents forming the basis of defendant's prosecution. The weight to be given to K.S.'s testimony in view of her inability to state the dates of the offenses with precision was for the jury to determine."

Escobedo, 151 Ill. App. 3d at 82.

Thus, the court determined that the defendant was proved guilty beyond a reasonable doubt. See also People v. Foley, 206 Ill. App. 3d 709, 715 (1990) ("The inability to remember exact dates and times merely affects the weight to be given the testimony and, taken alone, does not create reasonable doubt"); State v. Hayes, 81 Wash. App. 425, 432, 914 P.2d 788, 793 (1996) (the date is not a material element of the crime, and language "on or about" is sufficient to admit proof of the act at any time within the statute of limitations, so long as there is no alibi defense).

Here, the statute of limitations is not at issue, and defendant did not assert an alibi defense. Thus, the lack of testimony about the specific dates of the offenses does not entitle him to have any of his convictions reversed. However, the question remains whether K.J.L.'s testimony that various incidents happened "too many times to remember" and "more than five times," without pointing to a specific number of incidents, was sufficient to convict defendant on all counts.

There is very little case law in Illinois addressing when generic evidence about the number of offenses in a sexual abuse case may be sufficient to prove guilt beyond a reasonable doubt on all counts. Both parties rely on Escobedo, but there the victim gave a clear number of incidents that exceeded the number of counts charged, and she placed the incidents in the approximate time frame of the dates provided in the charges. Here, K.J.L.'s testimony was not so specific. As one court in

another jurisdiction explained, the issue raises several competing concerns when there are allegedly repeated instances of misconduct by a resident of the victim's home:

> " 'The so-called "resident child molester" is a person who lives with his victim or has continuous access to him or her. In such cases, the victim typically testifies to repeated acts of molestation occurring over a substantial period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults.' [Citation.]

The difficulty presented in such cases is clear. On the one hand, prosecutions based on such nonspecific or generic testimony are claimed to deprive the defendant of due process by preventing him from effectively defending against such charges, and by precluding a unanimous jury verdict as to each count in the indictment. [Citation.] On the other hand, 'testimony describing a series of essentially indistinguishable acts of molestation is frequently the only testimony forthcoming from the victim. To hold that such testimony, however credible and substantial, is inadequate to support molestation charges would anomalously favor the offender who subjects his victim to repeated or continuous assaults.' " United States v. Hawpetoss, 388 F. Supp. 2d 952, 960 (E.D. Wis. 2005), quoting People v. Jones, 51 Cal. 3d 294, 300, 792 P.2d 643, 645, 270 Cal. Rptr. 611, 613 (1990).

In Jones, a commonly cited case on the issue, the defendant was convicted of six counts of lewd conduct for incidents with one of his adopted children. The victim testified that the defendant molested him about one month after he moved in and once or twice each month during the two-year period that he lived with the defendant. He stated that incidents of oral copulation happened in five different locations, but he was unable to state specific dates or further details. He also stated that he

was molested in a similar fashion four to six times during camping trips and once over a Memorial Day weekend. Finally, he stated that he was molested 8 or 10 times in the bathroom or shower. Jones, 51 Cal. 3d at 302, 792 P.2d at 646-47, 270 Cal. Rptr. at 614-15. The California Court of Appeal held that there was insufficient evidence to support the six convictions, and the California Supreme Court reversed. Jones, 51 Cal. 3d at 322, 792 P.2d at 659, 270 Cal. Rptr. at 627.

The court stated:

"It must be remembered that even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of specific, albeit undifferentiated, incidents each of which amounts to a separate offense, and each of which could support a separate criminal sanction. (Of course, prosecutors should exercise discretion in limiting the number of separate counts charged. No valid purpose would be served by charging hundreds or thousands of separate counts of molestation, when even one count may result in a substantial punishment.)

* * *

*** [I]n determining the sufficiency of generic testimony, we must focus on factors other than the youth of the victim/witness. Does the victim's failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. [Citations.]

The victim, of course, must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the number of acts committed

with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe the general time period in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us') to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (Emphasis in original.) Jones, 51 Cal. 3d at 314-16, 792 P.2d at 654-56, 270 Cal. Rptr. at 622-24.

Because the victim testified about frequent molestations at five different locations during the time period specified in the charges, and because there was no statute of limitations issue, the court determined that the evidence was sufficient to convict.

Similarly, in Rose v. State, 123 Nev. 24, 163 P.3d 408 (2007), the defendant was convicted of 20 counts of sexual assault on a minor. The victim, who spent nearly every weekend at the defendant's home for several years, testified that the incidents happened every time she spent the night at the defendant's home and that the defendant touched her vagina with his finger more than 10 times and touched it with his tongue more than 10 times. The court affirmed, holding that the victim did not have to specify exact numbers as long as there were " 'some reliable indicia that the number of charged acts actually occurred.' " Rose, 123 Nev. at ___, 163 P.3d at 414, quoting LaPierre v. State, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992). The court distinguished the case from one in which the evidence was insufficient because the victim once stated that incidents happened more than 10 times, but later stated that she was not sure how many times they occurred or why she

previously stated more than 10 times. Rose, 123 Nev. at ___, 163 P.3d at 414-15, citing LaPierre, 108 Nev. at 530-31, 836 P.2d at 57; see also Hayes, 81 Wash. App. at 437-38, 914 P.2d at 796 (applying Jones and finding sufficient evidence); Hawpetoss, 388 F. Supp. 2d at 960, 963 (victim testimony that misconduct occurred as often as three times per week over a five-year period sufficient to convict on four counts); cf. People v. Smith, 205 Mich. App. 69, 72-73, 517 N.W.2d 255, 257 (1994) (victim's testimony referring to " 'pictures' " in the plural, but describing only one occasion during which photographs were taken, insufficient to convict on four counts of child sexual abuse).

Here, K.J.L. testified about the types of abuse, i.e., penile penetration, oral penetration, digital penetration, and fondling; and she provided details about the abuse, such as where it occurred and what happened when she said "no" or tried to run away. She also provided a general time frame for the abuse by describing where she was living when each incident occurred. But K.J.L. did not testify that each type of abuse occurred a specific number of times in any given period so as to show that more incidents occurred than were charged, a distinguishing factor in Escobedo, Jones, and Rose. Instead, K.J.L.'s testimony that the offenses happened too many times to remember was too generic to show a specific number of offenses. This, however, does not mean that there was insufficient evidence on all of the counts. Our review of the record reveals sufficient evidence to support six of the eight counts.

In regard to the two counts alleging incidents of oral penetration in December 2006, K.J.L. testified that defendant placed his penis on her mouth and placed his tongue on her vagina. Sibley also testified about defendant's admission to those counts. Thus, there was evidence specific to each of those counts and sufficient evidence to convict defendant on those counts.

The remaining six counts, alleging penile penetration, are more problematic. We observe that the counts alleged only that defendant placed his penis in K.J.L.'s vagina, but the elements of the offense are concerned only with "penetration" and do not draw a distinction between anal and vaginal penetration. See 720 ILCS 5/12--12(f) (West 2006). Thus, we consider specific evidence of either type of penetration sufficient to support the counts. See People v. Nathan, 282 Ill. App. 3d 608, 611 (1996) (when the essential elements of an offense are properly charged but the manner in which the offense is committed is incorrectly alleged, the error is merely formal). (There was also testimony specific to counts of digital penetration, but, because the trial court specifically found defendant not guilty on those counts, we consider only the evidence as it relates to the counts alleging penile penetration. See generally People v. Pender, 154 Ill. App. 3d 978, 980-81 (1987).) We determine that four counts of penile penetration were supported by sufficient evidence.

K.J.L. testified about two specific incidents of penile penetration that occurred at the old house, stating that defendant used his private parts on her "bottom" and her vagina and pushed them in and out. K.J.L.'s testimony indicates that she was referring to her anus when she used the term "bottom." After that, she testified generally that sexual abuse happened "too many times to remember" at the old house, but, because she did not specifically state whether she was referring to penile penetration or other forms of sexual contact, we cannot say that there was sufficient evidence of more than two counts of penile penetration occurring at the old house.

In regard to the new house, K.J.L. specifically testified that defendant again used his private parts on her bottom and her vagina in the same manner that he did at the old house, thus providing sufficient evidence of two more counts. But like the testimony about incidents at the old house, the testimony that defendant did those acts and other acts not involving penile penetration "too many

times to remember" was insufficient to show the number of additional, if any, instances of penile penetration at the new house.

Although K.J.L. also made reference to instances of penile penetration in December 2006, the record is not sufficiently clear to determine that these were not the same events that she testified about when she stated  generally that defendant used his private parts on her bottom and vagina at the new house.  We recognize that one could infer that these were two additional incidents of misconduct, but ultimately we conclude that the evidence was not specific enough to support that inference beyond a reasonable doubt.

The State argues that K.J.L.'s testimony that incidents happened more than five times was sufficient to prove six counts of penile penetration.  But the record does not show that K.J.L. was referring solely to those counts when the question was asked.  Before K.J.L. was asked if incidents occurred more than five times, she made a general reference to "touching" in "unavailable places," including her breasts, and there were no specific questions about penetration.  Thus, we cannot say that K.J.L.'s testimony that incidents occurred more than five times was sufficient to prove the six specific counts of penile penetration.  Accordingly, there was insufficient evidence to convict defendant on the remaining two counts.

### III. CONCLUSION

There was sufficient evidence to convict defendant on six of the eight counts.  Accordingly, we affirm defendant's convictions and sentences on six counts (the two alleging oral penetration and four alleging penile penetration), and we reverse his convictions on the remaining two counts.

Affirmed in part and reversed in part.

McLAREN and BOWMAN, JJ., concur.

-14-