2020 IL App (2d) 180992-U
No. 2-18-0992
Order filed December 16, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of DeKalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-643 |
| ADAM TIMM, | ) ) ) | Honorable Timothy J. McCann, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Bridges and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The minor victim's trial testimony and out-of-court statements, admitted substantively under 725 ILCS 5/115-10 (West 2016), were sufficient to sustain defendant's conviction on two counts of predatory criminal sexual assault of a child premised on penis-to-vagina penetration.

¶ 2    Defendant, Adam Timm, was convicted of five counts of predatory criminal sexual assault of a child. 720 ILCS 5/12-14.1(a)(1) (West 2010); *id.* § 5/12-12(f) (West 2010); 720 ILCS 5/11-1.40(a)(1) (West Supp. 2011); *id.* § 5/11-0.1 (West Supp. 2011); 720 ILCS 5/11-1.40(a)(1) (West 2012); *id.* § 5/11-0.1 (West 2012). Two counts alleged finger-to-vagina penetration, two counts alleged penis-to-vagina penetration, and one count alleged penis-to-anus penetration. Defendant

challenges only the convictions for the two counts alleging penis-to-vagina penetration on appeal, arguing that the evidence was insufficient to support those two convictions. We conclude that there was sufficient evidence to support defendant's convictions for the challenged counts. Accordingly, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On October 18, 2016, defendant was indicted on eleven counts of predatory criminal sexual assault of a child. 720 ILCS 5/12-14.1(a)(1) (West 2010); *id.* § 5/12-12(f) (West 2010); 720 ILCS 5/11-1.40(a)(1) (West Supp. 2011); *id.* § 5/11-0.1 (West Supp. 2011); 720 ILCS 5/11-1.40(a)(1) (West 2012); *id.* § 5/11-0.1 (West 2012). The charges alleged that defendant perpetrated various acts of abuse against the victim, S.C., between February 3, 2009, and February 3, 2012. The allegations came to light when S.C. disclosed the abuse initially to school personnel and subsequently to law enforcement.  In a recorded interview between Monique Heilemeier, a forensic interviewer, and S.C. conducted on September 20, 2016, at the DeKalb County Children's Advocacy Center, S.C. described a pattern of sexual abuse while she lived with defendant, her stepfather.

¶ 5     Prior to trial, the State moved to introduce the statements made by S.C. to Heilemeier at the September 20, 2016, interview pursuant to section 115-10 of the Illinois Code of Criminal Procedure (725 ILCS 5/115-10(a), (b) (West 2016)). The trial court held a hearing on the State's motion and later ruled that the statements were admissible as substantive evidence pursuant to section 115-10. A bench trial was held on April 27, 2018.

¶ 6     At trial, as she did during her interview with Heilemeier, S.C. described several specific instances of abuse perpetrated by defendant: (1) an incident at the Crystal Lake, Illinois, residence where S.C.'s grandmother lived; (2) an incident in an alley at a Walgreens in DeKalb, Illinois, that

S.C. visited alone with defendant; and (3) multiple incidents, both inside and outside, at the Gurler Street residence in DeKalb where S.C. lived with defendant.

¶ 7    S.C.'s trial testimony included the following. First, she recounted an incident at the Crystal Lake residence, saying that defendant tried to touch her vagina with his penis and came "[k]ind of close. I don't remember." S.C. also said that defendant touched the inside of her vagina with his fingers. Next, S.C. described an incident outside of a Walgreens. She explained that defendant led her down an alley, took off her pants, and tried to penetrate her anus with his penis. Finally, S.C. testified about multiple incidents at the Gurler Street residence, both inside defendant's room and outside in the backyard. Specifically, S.C. said that defendant placed his fingers in her vagina on at least one occasion and tried to penetrate her anus on at least one occasion.

¶ 8    After S.C.'s testimony concluded, the State introduced the recorded 2016 interview with Heilemeier into evidence and played it for the court. In this more detailed discussion of her abuse by defendant, S.C. began by describing the Crystal Lake incident, which she indicated occurred roughly at the at age of four. S.C. was lying in bed when defendant came into her room at around midnight. S.C. said defendant had his pants down and was beside her bed "playing with his thing in front of me" and subsequently described defendant's penis. S.C. said defendant then pulled her pajamas and underwear down near her ankles. S.C. said "[h]e actually tried to put it in me" before she ran out of the room and that defendant was lying "almost right on top of me." When S.C. told him to stop, defendant told her "nobody would believe you."

¶ 9    S.C. next described the Walgreens incident. S.C. said she walked with defendant to a DeKalb Walgreens around 10:00 pm to pick up ingredients to bake cookies. As they left the store, defendant led S.C. down an alley where he pulled down his pants and S.C.'s pants. While

defendant was holding her from behind, S.C. said defendant "tr[ied] to shove it in me," but wasn't able to put in her "butthole." S.C. pulled her pants up and ran away.

¶ 10    S.C. then described a particular incident at the Gurler Street residence. The day began with defendant playing hide-and-seek with S.C. and her cousin N.T., who was also a child at the time. In the course of the game, defendant exposed his penis to both S.C. and N.T. Later that night, S.C. was asleep in her room when she was awakened by vibrations to her bed caused by defendant "playing with his wiener." Defendant did "[t]he same thing he did as the first night, but he did it from the front."

¶ 11    S.C. indicated "he wasn't able to get it in there because I was still, it was still too small for it." When asked whether defendant had ever come close to putting his penis inside her vagina, S.C. responded "[y]eah, like, just the tip of it" and, when asked how that felt, S.C. responded that it felt "not good," that it "hurt" and "tickle[d]."

¶ 12    Subsequently, S.C. indicated that defendant stopped trying to put his penis inside her because he was unsuccessful. After that, however, S.C. said defendant would regularly "put[ ] it like on me," gesturing to her lap area. She later pointed to a picture where she had identified her vagina and indicated that was where defendant would put his "wiener."

¶ 13    In the course of the interview, S.C. also described how defendant would: digitally penetrate her vagina weekly at the Gurler residence; place what she described as a substance consistent with lubricant on his penis and masturbate in front of her to the point of "white stuff coming out of it"; place her hand on his penis; and rub a vibrator on her chest area and her vagina over her clothing. She also indicated that the defendant would tell her, "you like that."

¶ 14    When asked about the frequency of the abuse, S.C. described it happening weekly in Crystal Lake and twice weekly at the Gurler residence, starting when she was 4 years old. S.C.

acknowledged her previous 2012 interview regarding the N.T. incident where she denied being abused by defendant. She indicated her mother told her around that time, "that's what fathers do."

¶ 15    N.T. and N.T.'s mother also testified for the State regarding what had happened to N.T. Defendant had been convicted of aggravated criminal sexual abuse to N.T prior to the instant trial and defendant's sexual abuse of N.T was admitted as propensity evidence pursuant to 725 ILCS 5/115-7.3 (West 2016). The testified-to conduct included defendant masturbating in front of N.T., fondling N.T.'s vagina through the clothing, and kissing N.T.'s neck.

¶ 16    Defendant called two witnesses. First, his father, J.T., testified. He described the Crystal Lake apartment and the sleeping arrangements there differently than S.C., indicating that S.C. would sleep on a couch in the living room where defendant and her mother also slept on a floor mattress. He described his relationship with S.C. as close and indicated that he never saw any abuse and S.C. never said anything to him about abuse.

¶ 17    Defendant's second witness was S.C.'s mother, C.T., who was defendant's ex-wife at the time she testified. C.T. and defendant shared a biological child together. C.T. described the Crystal Lake apartment consistent with J.T.'s testimony, also indicating that S.C. did not sleep in a separate bedroom at that location. C.T. further testified that S.C. had never told her that defendant abused her and denied telling S.C. that "that's what fathers do," related to the N.T. abuse. She denied ever seeing S.C. upset or exhibiting a changed demeanor around defendant.

¶ 18    Defendant also introduced S.C.'s 2012 videotaped interview, which took place after the N.T. allegations where S.C. denied being abused by defendant, and N.T.'s 2012 videotaped statement to impeach the trial testimony of S.C. and N.T., respectively.

¶ 19    On May 2, 2018, the trial court found defendant guilty of five counts of predatory criminal sexual assault of a child. Specifically, the trial court found defendant guilty of counts I and II,

charging defendant with penis-to-vagina penetration; counts VI and VII, charging defendant with finger-to-vagina penetration; and count XI, charging defendant with penis-to-anus penetration. The court found defendant not guilty of counts III, IV, and V, alleging penis-to-vagina penetration; and counts VIII, IX, and X, alleging finger-to-vagina penetration. On May 31, 2018, defendant filed a motion for a new trial. On July 26, 2018, the trial court denied defendant's motion and sentenced defendant to 9 years' imprisonment for each count, with the sentences to run concurrently, for a total of 45 years' imprisonment. The trial court denied defendant's motion to reconsider and reduce the sentence. Defendant timely appealed.

¶ 20                               II. ANALYSIS

¶ 21     On appeal, defendant argues that the trial court erred when it found him guilty of two counts of predatory criminal sexual assault of a child predicated on penis-to-vagina penetration because the State failed to present sufficient evidence to prove defendant committed those acts beyond a reasonable doubt. Defendant points to S.C.'s trial testimony and claims that S.C. never testified that defendant's penis came into contact with her vagina at any time. The State counters that defendant's argument overlooks the recording of S.C.'s 2016 forensic interview with Heilemeier, which was introduced substantively at trial and which shows S.C. describing instances in which defendant's penis came into contact with her vagina. Defendant nevertheless contends that "S.C. did not accuse the defendant in her videotaped statement or her testimony that defendant's penis made actual contact with her vagina."

¶ 22     "The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Letcher*, 386 Ill. App. 3d 327, 330 (2008). A reviewing court will not substitute its own judgment for the judgment

of the factfinder regarding the weight of the evidence or the credibility of witnesses, including the resolution of conflicts or inconsistencies. *Id.* A conviction will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt. *Id.*

¶ 23    A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older and commits an act of "sexual penetration" with a victim who is under 13 years of age. 720 ILCS 5/12-14.1(a)(1) (West 2010); 720 ILCS 5/11-1.40(a)(1) (West Supp. 2011); 720 ILCS 5/11-1.40(a)(1) (West 2012). "Sexual penetration" includes "any contact, however slight, between the sex organ or anus of one person and *** the sex organ, mouth, or anus of another person or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12-12(f) (West 2010); 720 ILCS 5/11-0.1 (West Supp. 2011); 720 ILCS 5/11-0.1 (West 2012).

¶ 24    The trial court found defendant guilty of five total counts of predatory criminal sexual assault of a child. Defendant challenges the counts (I and II) that alleged penis-to-vagina penetration, correctly recognizing that the State was only required to prove contact rather than penetration. Defendant's conviction on counts I and II will be affirmed if any rational trier of fact could have found beyond a reasonable doubt that defendant's penis touched S.C.'s vagina on two or more occasions.

¶ 25    In support of his contention that there was insufficient evidence to uphold the penis-to-vagina convictions, defendant points to various inconsistencies between S.C.'s trial testimony and her section 115-10 videotaped interview, internal inconsistencies as to both, the fact that S.C. denied abuse in her 2012 interview, and the consistent testimony of J.T. and C.T. which impeached S.C. as to living arrangement details at the Crystal Lake address.  Defendant also points to

instances where S.C. essentially conflates or is unspecific as to whether defendant engaged in digital or penile penetration, or was speaking about penis-to-anus contact, during the course of her 2016 videotaped interview.

¶ 26    While S.C.'s 2016 videotaped statement was not always a model of clarity, and there exist a number of inconsistencies as indicated, we view the trial court's judgment regarding the resolution of such inconsistencies with deference.  We will affirm convictions notwithstanding such contradictions where the evidence is not so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt. See *Letcher*, 386 Ill. App. 3d. at 330-31. Evidence will be sufficient to support a conviction of predatory criminal sexual assault of a minor where the child can describe (1) the kind of acts committed with sufficient specificity, (2) the number of acts committed with sufficient specificity, and (3) the time period in which the acts occurred generally. *Id.* at 334.

¶ 27    At trial and during the 2016 forensic interview, S.C. described several specific instances in which defendant committed sexual abuse, providing locations, times of day, and her general age at the time of each incident. She said that defendant had placed the tip of his penis in her vagina and described the sensation, stating that it "hurt" and "tickle[d]."  Further, S.C. explained that, after defendant had given up trying to penetrate her, he placed his penis on her vagina on other occasions.  She indicated this in the course of the Heilemeier interview, both while pointing to her abdominal area and while pointing to an anatomical drawing where she indicated her vagina was located.

¶ 28    Considering S.C.'s trial testimony and her description of the abuse during the September 2016 forensic interview together, we conclude that the trial court's finding, that defendant committed two instances of predatory criminal sexual assault of a child based on penis-to-vagina contact beyond a reasonable doubt, was rational. The trial court reasonably found that there was

at least one incident of contact between defendant's penis and S.C.'s vagina where she described how he partially inserted his penis in her vagina causing it to hurt and tickle. Further, that the trial court reasonably found that there was at least one additional instance of penis-to-vagina contact is buttressed by S.C.'s explanation about how defendant's conduct recurred throughout the time that she lived with him, including his placing his penis on her vagina at a time after he stopped trying to insert it.

¶ 29    In so concluding, we remain cognizant of the "natural sense of shame, fear, revulsion, and embarrassment" that can impact the testimony of child victims when speaking about sexual abuse. *People v. Priola,* 203 Ill. App. 3d, 401, 414 (1990). Thus, viewing the evidence in the light most favorable to the State, S.C.'s statements provided sufficient specificity to support two counts of predatory criminal sexual assault of a child based on penis-to-vagina contact beyond a reasonable doubt.

¶ 30                                III. CONCLUSION

¶ 31    For the reasons stated, we affirm the judgment of the circuit court of DeKalb County.

¶ 32    Affirmed.