NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 231545-U

NO. 4-23-1545

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 27, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| KYLE PERKINS, | ) | No. 23CF245 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Frank R. Fuhr, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Lannerd and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*: The State proved defendant guilty beyond a reasonable doubt and defendant's convictions did not violate the one-act, one-crime rule or expose him to potential future prosecutions in violation of double jeopardy principles.

¶ 2   In September 2023, following a bench trial, the trial court found defendant Kyle Perkins guilty of six counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2020)) and one count of predatory criminal sexual assault of a child (*id.* § 11-1.04(a)(1)).

¶ 3   On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt of two of the counts of criminal sexual assault. In the alternative, he argues the convictions violated the one-act, one-crime rule and exposed him to potential future prosecutions in violation of the principles of double jeopardy. We affirm.

I. BACKGROUND

¶ 5        In March 2023, the State filed 11 counts against defendant in connection with allegations he sexually abused his daughter K.T. (born in 2008) and stepdaughter S.S. (born in 2007) in Rock Island County. Only two counts of criminal sexual assault are at issue on appeal. In count 9, the State alleged that, between October 1, 2020, and September 30, 2021, defendant intentionally committed an act of sexual penetration upon S.S., who was a family member under 18 years of age at the time of the offense, by putting his penis in her vagina. Count 10 alleged the same, but between the dates of October 1, 2021, and September 30, 2022. S.S. was referred to in the charging documents as "Jane Doe 2."

¶ 6        In September 2023, a bench trial was held. Defendant's wife Melissa testified that S.S. was one of her four biological children. K.T. was her stepchild. Melissa met defendant in 2015, and about six months later, he moved into Melissa's home in Manchester, Iowa, where she lived with her children.

¶ 7        In 2019, Melissa and defendant married. In October of that year, the family moved to Davenport, Iowa, moving again in December 2019 to Rock Island, Illinois. At that time, S.S. was 12 years old.

¶ 8        In March 2020, defendant moved out of the Rock Island house for about six or seven months. However, in September or October 2020, defendant moved back in. At that time, Melissa was working more than 40 hours per week. Defendant was not working and was home most of the time. S.S. was not attending school at that time and was also home most of the time.

¶ 9        In May 2022, K.T. moved from Michigan to live with the family in Rock Island. In August 2022, defendant was arrested on an old warrant from Manchester, Iowa. Defendant was in jail for several months and did not return to the house in Rock Island until December 2022.

¶ 10    In March 2023, defendant and K.T. moved to Cedar Rapids, Iowa, where they stayed for about a week with Chelsea R., defendant's new girlfriend. After defendant and K.T. moved, Melissa and S.S. found a journal that K.T. had left in a bedroom. Melissa looked at K.T.'s journal and began to have concerns about both K.T. and S.S. Based on what Melissa read in the journal, she had a discussion with S.S. about S.S.'s relationship with defendant and contacted the police. Melissa then brought S.S. to the child advocacy center in Rock Island for an interview.

¶ 11    S.S., who was 15 years old at the time of defendant's trial, testified defendant was her stepfather. When S.S. lived in Manchester, Iowa, S.S. and defendant were often alone together in the residence while Melissa was at work. S.S. testified that, when she was about nine years old, defendant began to perform "bad touches" on her breasts and vaginal area.

¶ 12    After the family moved to Rock Island, Melissa worked most days, and defendant was home most of the time. During a couple of days each week, S.S. and defendant were the only two people in the house.

¶ 13    S.S. described an incident that occurred about a week or two after they moved to Rock Island while S.S. and defendant were watching the movie Alice in Wonderland. At that time, S.S. was 12 years old. Near the end of the movie, defendant started to touch S.S.'s thigh. After the movie ended, defendant started to touch S.S.'s vaginal area. Next, defendant removed S.S.'s leggings and underwear. Defendant was not wearing any clothes, and he had an erection. S.S. testified defendant "had laid me on my back and had gotten between my legs before pushing his erection inside my vaginal area." She said defendant pushed his erection in and out of her vaginal area for a long time and described it as he was having sex with her. Defendant ejaculated on S.S.'s stomach and chest. S.S. testified that after defendant had finished vaginally penetrating her, she laid in her bed and cried before going to sleep. She said she did not tell anyone what happened

- 3 -

because she was scared, did not know how to tell anyone, and thought no one would believe her.

¶ 14    The State next explored the number of times defendant sexually abused S.S., and the following colloquy occurred:

"Q. Okay. Now, you just described what happened in [defendant's] bedroom and your mom's bedroom while watching Alice in Wonderland.

A. Yes.

Q. Was that the only time that that happened?

A. No.

Q. Did it happen—How often would it happen would you say?

A. I would say three or four times every one or two weeks.

Q. Okay. But you couldn't say exactly, right?

A. No.

Q. It just happened a lot?

A. Yes.

Q. Now, every time something like that happened, you just described to [the] Court the order of what happened and what kind of things happened?

A. Yes.

Q. Did it happen similar to that every time?

A. Yes.

Q. When it happened—You're going to have to be a little bit more specific, okay. I'm not going to ask you about every time that it happened, but just specifically. Okay?

A. Okay.

Q. Would your clothes be on or off?

A. Elaborate.

Q. Would you have your clothes on or would your clothes be off?

A. Most of the time off.

Q. Okay. And how would they get off most of the time?

A. He would take them off.

Q. Okay. And when this happened these other times, can you describe to the Court what the bad touches were?

A. It was mainly what I had described."

The State also asked S.S., "When [K.T.] moved down to live with you in Rock Island did what you describe after Alice in Wonderland continue to happen?" S.S. responded, "Less, but, yes, it did continue to happen." S.S. testified the last time the conduct happened was three or four weeks before defendant and K.T. left the house and it was like what happened when she and defendant watched Alice in Wonderland.

¶ 15    S.S. testified she did not tell anyone about the sexual assaults, even when defendant was in jail, because she was scared and did not know how to tell anyone. She said defendant talked to her about wanting a family and getting her pregnant. S.S. did not want to get pregnant and have a family with him. After defendant and K.T. moved out, S.S. felt safer but was concerned about K.T. When S.S. found K.T.'s diary, she looked at it and testified she "found some things that seemed very similar to my situation." S.S. told Melissa, who also looked at the diary. S.S. then disclosed to Melissa what had happened to her.

¶ 16    The State asked S.S., "How do you know this all happened?" S.S. responded: "Because it happened to me. I was the main victim in my story. And so, yeah, five years of my life

kind of taken."

¶ 17    K.T. testified about instances of sexual abuse. A police sergeant and a child abuse assessment worker also testified about behavior they witnessed defendant exhibit toward K.T. that seemed odd or romantic.

¶ 18    Defendant testified and denied the allegations. He also disputed that he moved out of the Rock Island home from March 2020 to September or October 2020, stating that he did not return until October or November 2021. However, Melissa testified in rebuttal that she was sure he returned in October 2020. Chelsea R. testified defendant and K.T. stayed with her for a day or two and she did not notice any unusual behavior between defendant and K.T.

¶ 19    During closing arguments, the State told the trial court:

    "Judge, I'm not saying this is an easy case. I'm not saying that we proved each count beyond a reasonable doubt. There's a particular count in [K.T.'s] charges where [K.T.] didn't testify about I think [defendant] ejaculating on her leg. I know we can't prove that if she didn't testify about that, Your Honor. But I think K.T.'s and S.S.'s testimony was credible, they have no reason to lie, and I think the [d]efendant should be found guilty of nearly all of the charges."

¶ 20    The trial court found defendant not guilty of five charges and guilty of six. In doing so, the court stated:

    "Obviously, this case came down to a matter of credibility. I just went back and reviewed the jury instruction on judgment of credibility that we give to a jury in every case.

    Considering the testimony of any witness you may take into account his or her ability and opportunity to observe, his or her age, his or her memory, his or her

manner while testifying, any interest, bias, or prejudice he or she may have, and the reasonableness of the testimony when considered in the light of the other evidence in the case.

I have done that with each witness; especially [K.T.], and [S.S], and [defendant]. I find that [K.T.] and [S.S.] were credible. They had no motive to lie. As [the State] pointed out, it was the hardest thing they have ever done. These acts were rape, but not by force or threat, but by grooming, gifts, favors, attention. It was evil. So there are some gaps in the testimony."

¶ 21 The trial court found defendant guilty on counts 1, 2, 7, 9, 10, and 11, and not guilty on counts 3, 4, 5, 6, and 8. Defendant filed a motion for a new trial, alleging the State failed to prove him guilty beyond a reasonable doubt. The court denied the motion and sentenced defendant to an aggregate sentence of 36 years' imprisonment.

¶ 22 This appeal followed.

¶ 23 II. ANALYSIS

¶ 24 On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt of counts 9 and 10 because S.S.'s testimony was insufficient to prove the conduct alleged in those counts. In the alternative, he argues convictions of both counts violate the one-act, one-crime rule and exposes him to potential future prosecutions in violation of principles of double jeopardy.

¶ 25 A. Sufficiency of the Evidence

¶ 26 Defendant first contends S.S.'s testimony was too vague to support convictions of counts 9 and 10 when she did not specify the number of acts committed, when they occurred, or that the acts involved sexual penetration.

- 7 -

¶ 27        "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35. "When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64. "The trier of fact remains responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts," and "[t]he reviewing court does not retry the defendant." *People v. Harris*, 2018 IL 121932, ¶ 26. On review, "[a] criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Jackson*, 2020 IL 124112, ¶ 64.

¶ 28        Further, "[t]he testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *Gray*, 2017 IL 120958, ¶ 36. A criminal conviction may also be based on circumstantial evidence, as long as it satisfies proof beyond a reasonable doubt of the charged offense. *People v. Hall*, 194 Ill. 2d 305, 330 (2000).

¶ 29        Relevant to this case, a person commits criminal sexual assault if that person commits an act of sexual penetration, that person is a family member of the victim, and the victim is under 18 years of age. 720 ILCS 5/11-1.20(a)(3) (West 2020). Sexual penetration is defined as

> "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including, but not limited to,

cunnilingus, fellatio, or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." *Id.* § 11-0.1.

¶ 30 "The date of the crime is not an essential element of the offense when the statute of limitations is not questioned." *People v. Letcher*, 386 Ill. App. 3d 327, 331 (2008). Instead, it is sufficient for the victim to describe the (1) act or acts committed with sufficient specificity to ensure that unlawful conduct has indeed occurred and, where necessary, to differentiate between various types of proscribed conduct; (2) number of acts committed with sufficient certainty to support each of the counts; and (3) general time period in which those acts occurred to assure the acts were committed within the applicable limitation period. *Id.* at 334. Additional information regarding the time, place, and circumstances of the various assaults may assist in assessing the credibility of the victim's testimony but is not essential to sustain a conviction. *Id.* The State is not required to show that the victim's testimony was clear and convincing or substantially corroborated in order to prove guilt beyond a reasonable doubt. *Id.* at 331.

¶ 31 "[I]t is often difficult in the prosecution of child sexual abuse cases to pin down the times, dates, and places of sexual assaults, particularly when the defendant has engaged in a number of acts over a prolonged period of time." *People v. Bishop*, 218 Ill. 2d 232, 247 (2006).

> " ' "[T]estimony describing a series of essentially indistinguishable acts of molestation is frequently the only testimony forthcoming from the victim. To hold that such testimony, however credible and substantial, is inadequate to support molestation charges would anomalously favor the offender who subjects his victim to repeated or continuous assaults." ' " *Letcher*, 386 Ill. App. 3d at 333 (quoting *United States v. Hawpetoss*, 388 F. Supp. 2d 952, 960 (E.D. Wis. 2005), quoting *People v. Jones*, 51 Cal. 3d 294, 300 (Cal. 1990)).

Even generic testimony, such as an act of intercourse " ' "once a month for three years" ' " outlines a series of specific, albeit undifferentiated, incidents, each of which amounts to a separate offense. *Id.* (quoting *Jones*, 51 Cal. 3d at 314).

¶ 32　　　　　Here, taking the evidence in the light most favorable to the State, we find sufficient evidence to convict defendant of counts 9 and 10. Regarding proof of penetration, S.S. testified specifically about an act of penetration that occurred while watching Alice in Wonderland in late 2019 or early 2020. She then testified defendant continued to commit "that" act three or four times every one or two weeks. The conduct continued to occur until shortly before defendant and K.T. moved out. When testifying about "similar" conduct, references were specifically made to the assault that occurred while defendant and S.S. were watching Alice in Wonderland, which specifically involved sexual penetration. For example, in reference to the assault that occurred after watching Alice in Wonderland, counsel asked S.S., "Now, every time something like that happened, you just described to [the] Court the order of what happened and what kind of things happened?" S.S. responded, "Yes," and further responded, "Yes," when asked, "Did it happen similar to that every time?" The clear and reasonable inference from S.S.'s testimony was that defendant's continuing conduct involved the same type of act of penetration. S.S. also testified defendant spoke to her about getting her pregnant, providing a further inference that his continuing conduct involved penetration.

¶ 33　　　　　The State also proved separate offenses. Count 9 alleged that an act of penetration occurred between October 1, 2020, and September 30, 2021. There was evidence defendant resided at the Rock Island house for that entire period. Count 10 alleged the dates of October 1, 2021, to September 30, 2022, and there was evidence defendant resided at the house for most of that time period. Further, S.S. testified, again referring to Alice in Wonderland, that the conduct

continued, but less frequently, after K.T. moved in during that time period. The trial court specifically found S.S.'s testimony credible.

¶ 34    Defendant relies on *Letcher* and *People v. Chrisman*, 2021 IL App (2d) 190529-U, to argue the evidence was too vague to support the State's case. In *Letcher*, regarding two counts involving penetration, the victim testified the defendant committed acts involving penetration and other acts not involving penetration " 'too many times to remember.' " *Letcher*, 386 Ill. App. 3d at 336. The appellate court held that testimony was insufficient to show or infer the number, if any, of additional acts of penetration beyond those the victim specifically referenced. *Id.* Thus, that testimony alone was not enough to establish guilt beyond a reasonable doubt. *Id.* However, the court affirmed six convictions in which the victim provided testimony about specific acts of penetration. *Id.* at 335-36. In *Chrisman*, the court concluded there was sufficient evidence of multiple distinct acts of sexual assault and found testimony the defendant had intercourse with the victim multiple times in her bedroom supported multiple charges involving sexual penetration. *Chrisman*, 2021 IL App (2d) 190529-U, ¶ 63.

¶ 35    We find *Letcher* distinguishable. In *Letcher*, regarding the two counts reversed on appeal, the references to additional conduct could not be distinguished from acts that did not involve penetration because the testimony was too generic. Thus, it was insufficient to prove additional acts of penetration occurred. Here, however, as previously discussed, S.S.'s testimony specifically related defendant's ongoing conduct to the act of penetration that occurred after she and defendant watched Alice in Wonderland. The evidence was not generic, vague, or indistinguishable from other acts, as it was in *Letcher*. Thus, the testimony as a whole led to a clear and reasonable inference that penetration actually occurred on multiple occasions during the date ranges charged. *Chrisman* also does not help defendant because the appellate court there found

- 11 -

testimony about multiple acts supported the finding of guilt on multiple counts. Here, all of the evidence, viewed in a light most favorable to the State, allowed a rational trier of fact to conclude that, during the time periods alleged in counts 9 and 10, acts of sexual penetration were proved beyond a reasonable doubt.

¶ 36                    B. One-Act, One-Crime Rule and Double Jeopardy

¶ 37        Defendant next argues his convictions on counts 9 and 10 violate the one-act, one-crime rule because the record makes it impossible to identify the specific acts that resulted in the convictions. He further argues that the two charges expose him to future prosecutions in violation of double jeopardy.

¶ 38        Defendant acknowledges that he failed to raise issues of the one-act, one-crime rule or double jeopardy in the trial court but maintains the issues are reviewable as plain error. To preserve a purported error for our review on appeal, a defendant must object at trial and raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. Failure to complete either of these requirements results in the defendant's forfeiture of that claim. *Id.* The plain-error doctrine, however, allows this court to review an otherwise forfeited error when such error is clear or obvious and (1) the evidence is so closely balanced the error alone threatened to tip the scales of justice against the defendant or (2) the error is so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. See *People v. Moon*, 2022 IL 125959, ¶ 20. The burden of proving the plain-error doctrine applies falls on the defendant. *Id.* It is well-established that the second prong of the plain-error doctrine applies to forfeited one-act, one-crime arguments. See *People v. Nunez*, 236 Ill. 2d 488, 493 (2010). However, our first task is to determine whether defendant has shown that a clear or obvious error occurred. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 39 "The prohibition against double jeopardy protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *People v. Price*, 369 Ill. App. 3d 395, 398 (2006) (citing *Ohio v. Johnson*, 467 U.S. 493, 498 (1984)). Defendant here argues the second and third provisions apply to him.

¶ 40 "The one-act, one-crime rule is used to enforce the third double-jeopardy prohibition, which is that a person should not suffer multiple punishments for the same act." *Id.* at 404. Thus, the one-act, one-crime doctrine prohibits multiple convictions that arise from the same physical act. *People v. Miller*, 238 Ill. 2d 161, 165 (2010); *People v. King*, 66 Ill. 2d 551, 566 (1977). When evaluating whether a conviction violates the one-act, one-crime rule, we must determine (1) whether the defendant committed multiple acts and (2) if so, whether any of the charges are lesser-included offenses. *King*, 66 Ill. 2d at 566; *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). An "act" is defined as "any overt or outward manifestation which will support a separate offense." *People v. Crespo*, 203 Ill. 2d 335, 340-41 (2001). We review *de novo* whether a defendant's convictions violate the one-act, one-crime doctrine. *People v. Csaszar*, 375 Ill. App. 3d 929, 943 (2007).

¶ 41 Here, defendant claims the acts alleged were so generic that the State failed to charge and prove separate acts. He also argues the State failed to apportion or distinguish the acts in the charging documents. However, as previously noted, the State charged and sufficiently proved acts occurring on different dates. Count 9 specifically charged an act occurring between October 1, 2020, and September 30, 2021, while count 10 alleged an act occurring between the dates of October 1, 2021, and September 30, 2022. Thus, defendant was not convicted on multiple counts based on a single act. Instead, he was convicted and sentenced on multiple counts for having

committed the same offense on multiple occasions against the same victim. Those were entirely separate acts. See *People v. Avendano*, 2023 IL App (2d) 220176, ¶ 56. The charges here also did not involve lesser-included offenses. Accordingly, defendant's assertion that the one-act, one-crime doctrine requires this court to vacate one of his convictions fails.

¶ 42       In the alternative, defendant also argues he could be subject to future prosecution for an identical offense in violation of double jeopardy, suggesting again that each count charged was not linked to separate identifiable offenses either in the charging documents or at trial.

¶ 43       As set forth in section 111-3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(a) (West 2020)), a defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him. *People v. Rowell*, 229 Ill. 2d 82, 92-93 (2008). Section 111-3(a) provides:

> "(a) A charge shall be in writing and allege the commission of an offense by:
>
>> (1) Stating the name of the offense;
>>
>> (2) Citing the statutory provision alleged to have been violated;
>>
>> (3) Setting forth the nature and elements of the offense charged;
>>
>> (4) Stating the date and county of the offense as definitely as can be done;
>
> and
>
>> (5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." 725 ILCS 5/111-3(a) (West 2020).

¶ 44       Here, each count cited the applicable statute that was violated, the nature of and the elements applicable to the charge, a specific time period within which the alleged offenses occurred, the county where the offenses occurred, defendant's name, and the victim's identity as

"Jane Doe 2," which defendant does not challenge as insufficient of appeal. As previously noted, counts 9 and 10 charged separate acts because they occurred between different date ranges. That information, along with the record of proceedings in the instant case, would allow defendant to assert a double jeopardy defense in bar of a subsequent prosecution for the same offense. See *Avendano*, 2024 IL App (2d) 220176, ¶ 60 (finding the same under similar circumstances). "[I]f any future prosecution were attempted, prior prosecution on the same facts may be proved by resort to the record." *People v. Johnson*, 65 Ill. 2d 332, 339 (1976).

¶ 45        Defendant relies on the federal case of *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), to argue otherwise. We note that decisions of the federal appellate courts are not binding authority here, though they may be considered persuasive authority. *People v. Leavitt*, 2014 IL App (1st) 121323, ¶ 48. As it happens, several courts have found *Valentine* to be decidedly unpersuasive. See, *e.g.*, *State v. Billman*, 2013-Ohio-5774, ¶ 34 (Ohio Ct. App. 2013) (noting that *Valentine* "has been distinguished in every subsequent Sixth Circuit decision that cites it on" the double jeopardy issue). Those courts include the Illinois Appellate Court. See *Avendano*, 2023 IL App (2d) 220176, ¶ 61; *People v. Gonsalez-Garcia*, 2023 IL App (2d) 230035-U, ¶¶ 51-52. *Valentine*, then, arrives with little to recommend it.

¶ 46        However, defendant having relied on *Valentine*, we find it appropriate to examine the merits of his reliance on it here. In *Valentine*, the defendant was indicted on 20 identical counts of child rape and 20 identical counts of felonious sexual penetration of a child. *Valentine*, 395 F.3d at 629. However, the indictment alleged all 40 acts occurred between March 1 and January 16, 1996, and no further information was provided to distinguish the acts from one another. *Id.* The victim testified the defendant forced her to perform fellatio on about 20 occasions, he digitally penetrated her vagina on about 15 occasions, and he anally penetrated her on about 10 occasions.

- 15 -

*Id.* The appellate court found there was insufficient specificity in the indictment and at trial to enable the defendant to plead the convictions as a bar to further prosecutions. *Id.* at 634. Thus, the court held that the defendant would be unable to protect himself against double jeopardy because he could be punished multiple times for the same offense. *Id.* at 634-35. In doing so, the court noted the prosecution could have easily differentiated between the counts by using different time frames, types of offenses, or generic locations. *Id.* at 638.

¶ 47        Unlike *Valentine*, the State here charged defendant with separate acts occurring within specific, different date ranges. The evidence supported multiple counts of the same offense, as there was evidence that the offense occurred multiple times. Each act charged was clearly separate from the others based on the differing date ranges. Further, defendant's argument is speculative, as nothing in the record indicates the State intends to bring additional charges against him. It is puzzling, to say the least, that we are asked to apply double jeopardy to the adjudication of the original adjudication, rather than to require it to be raised in the context of a subsequent action. In any event, were that to happen, the indictment and the trial record are sufficient to allow the defendant to plead his convictions as a bar to future prosecutions. See *Avendano*, 2023 IL App (2d) 220176, ¶ 60; *Gonsalez-Garcia*, 2023 IL App (2d) 230035-U, ¶ 52. Consequently, even if we were to join the apparent minority of courts following *Valentine*, it would not support defendant's argument here.

¶ 48        Defendant also argues that the State admitted during closing arguments it could not distinguish specific acts by stating it was not arguing it proved each count beyond a reasonable doubt. But the State's comments as a whole do not show it made any admission regarding counts 9 and 10. Instead, the State specifically referenced counts involving K.T. that are not at issue in this appeal. Further, the trial court did indeed find defendant not guilty of some counts, including

doing so based on the date ranges given for count 8.

¶ 49    In sum, defendant's one-act, one-crime rule and double jeopardy arguments lack merit.

¶ 50                            III. CONCLUSION

¶ 51    For the reasons stated, the judgment of the trial court is affirmed.

¶ 52    Affirmed.